WESTINGHOUSE ELECTRIC CORPORATION ET AL. *v.* MINNIX ET AL.

[No. 9, September Term, 1970.]

*Decided October 19, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Joe M. Kyle,* with whom were *Heise, Kyle & Jorgensen* on the brief, for appellants.

*Joseph J. D'Erasmo,* with whom were *Vivian V. Simpson, Joseph B. Simpson, Jr., H. Algire McFaul* and *Simpson & Simpson* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

We must determine on this appeal the sufficiency of notice given a contractor by the supplier of materials to a subcontractor of its claim for an unpaid balance. Involved is the question of sufficiency of notice as required by Code (1969 Repl. Vol.) Art. 90, § 11 (c), as well as the legal import of provisions of a payment bond which places a more onerous burden on the supplier regarding notice than does the Statute.

Westinghouse Electric Corporation, plaintiff-appellant and supplier of materials, sued A. C. Minnix and Sons, a general contractor, and Reliance Insurance Company, the surety, both defendants and appellees, on a payment bond for the unpaid balance due it for materials sold and delivered to an electrical subcontractor, Henry B. Johnson, Jr., incident to the construction of a public junior high school in Montgomery County. The Circuit Court for

Montgomery County, rendering judgment for the defendants, disallowed the claim on the ground that the supplier had failed to give proper notice of its claim to the contractor as required by Code (1969 Repl. Vol.) Art. 90, § 11 (c).

In addition to the notice which the Statute requires the supplier to give the contractor, the payment bond provided that the supplier give notice to any two of "The Principal, Owner or Surety * * *." The appellees, in the court below, raised the issue of the sufficiency of the notice viewed in light of the Statute, as well as the question of the legal effect of the dual notice requirement provided in the payment bond. However, the lower court disposed of the case on the basis of the failure of notice as required by the Statute and hence it became unnecessary for it to reach the issue regarding the legal significance of the notice provisions in the payment bond.

The appellant concedes that it made no effort to give notice of its claim to either the Montgomery County Board of Education or the Reliance Insurance Company as required by the terms of the payment bond. The lower court also made findings of facts, which are not disputed on appeal, to the effect that $3,151.97 is the correct unpaid balance due and owing Westinghouse for materials, that the subcontractor Johnson is financially unable to pay the balance and, that the letter dated September 26, 1968, sent from Westinghouse to the contractor (which we will later discuss) was mailed and received within the 90 day statutory period. The question of the legal sufficiency of this letter as proper notice is the pivotal question in this case.

Article 90, § 11 (c) provides in pertinent part:

"* * * any person having direct contractual relationship with a subcontractor of the contractor * * * but no contractual relationship express or implied with the contractor furnishing said payment bond, shall have a right of action upon the payment bond upon giving written notice to

the contractor within ninety (90) days from the date of which such person did, or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed."

The appellant supplied electrical material and equipment to the subcontractor during the period of February to August, 1968, in the total amount of $12,066.97. Of that sum, $8,915.00 has been paid to the appellant leaving an unpaid balance of $3,112.29. On September 26, 1968, the appellant mailed the following letter by certified mail to the contractor setting forth the then unpaid balance of $7,066.97.

"Allen C. Minnix & Sons Company
3903 14th Street, N.W.
Washington, D. C.
Sub: Sherwood Olney High School
    Olney, Maryland
    H. B. Johnson, Jr.
    Electrical Contractor

Gentlemen:

On June 5, 1968, we notified you via certified mail that the above contractor had an unpaid balance of $8,835.34, which covers material supplied by us to the subject job.

On July 2, 1968, we received your Check #38496 in the amount of $5,000.00 which was made out jointly. We have credited the account of H. B. Johnson, Jr. in the amount of $5,000.00.

Since June 1, 1968, we have furnished additional materials to the subject job and wish to advise that we now carry an unpaid balance of $7,066.97; as of 8/21/68. A breakdown of this amount is attached for your information.

Thank you for your prompt attention to this matter.

> Very truly yours,
> WESTINGHOUSE ELECTRIC
> SUPPLY COMPANY
> F. T. Corcoran
> Assistant Credit Manager

FTC/sp
Encl.
cc: H. B. Johnson, Jr."

The appellant rests its case on the sufficiency of the above letter as proper notice under the Statute. The lower court, however, in a well reasoned, albeit, erroneous opinion, found the notice wanting. The court below structured its opinion on what is thought to be the interpretation given to the notice provisions of the Miller Act, 40 U.S.C. 270 b (a), similar to the Maryland Statute, by the Federal courts. In recent years this Court has on occasion looked for guidance to the Federal courts' decisions construing provisions of the Miller Act which are parallel to the Maryland Statute. See *Ruberoid Co. v. Glassman Construction Co.*, 248 Md. 97, 106, 234 A. 2d 875 (1967); *Montgomery County v. Glassman*, 245 Md. 192, 202, 225 A. 2d 448 (1967); *Baltimore County v. Knott*, 234 Md. 417, 424, 199 A. 2d 369 (1964); *Hamilton v. Board of Education*, 233 Md. 196, 200, 195 A. 2d 710 (1963).

However, clearly we are not bound to follow the Federal decisions and at least in the instant case we do not find the majority opinion in *United States v. Baehner*, 326 F. 2d 556 (2nd Cir. 1964), relied on by the lower court, persuasive. Furthermore, were we to agree with the interpretation given the notice requirement in *Baehner*, we think that a holding that the letter in the instant case constituted valid notice within the meaning of the Statute, would not be inconsistent with the rationale of *Baehner*.

In *Baehner*, the supplier mailed a letter to the con-

tractor in which it informed the contractor of the sub-contractor's delinquency in payment for materials. The Court in determining whether there was a sufficiency of notice within the meaning of the Miller Act, found that there was not, stating through Judge Medina:

> "This [the Miller Act] has been construed by the courts as requiring that 'the writing must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill.' *Bowden v. United States,* 9 Cir. 1956, 239 F. 2d 572, at page 577, citing numerous authorities. The ruling in this Circuit is the same. *United States for Use and Benefit of J. A. Edwards & Co. v. Thompson Construction Corp.,* 2 Cir., 1959, 273 F. 2d 873, 876. \* \* \*
>
> "Applying this test, and disregarding the fact that the first letter was sent before the completion of the work to be performed by Joyce, the letters are plainly insufficient. They do not even intimate or suggest that any claim is being asserted against the prime contractor or that Joyce is looking to the prime contractor for the payment of his bill." 326 F. 2d 558.

That the lower court in this case was captivated by the majority opinion in *Baehner* is obvious from the language employed in its opinion wherein it states:

> "A careful reading of plaintiff's exhibit 3 [the letter] does not disclose expressly or impliedly, that the plaintiff is going to look to the general contractor for payment of the stated claim. This essential element of the notice requirement not being found, it is the court's view that no notice was in fact or in law given as required by the statute. No notice having been given within the required time, plaintiff's claim under the bond must fail."

Indeed, we are more impressed with the reasoning of the minority opinion in *Baehner*, wherein Judge Marshall (now Mr. Justice Marshall) states:

> "To require, as the majority does, a specific statement that the supplier is looking to the contractor for payment, is an unnecessary restrictive interpretation of the statute, which, after all, is designed to afford protection to suppliers and materialmen." 326 F. 2d 559.

We think a construction placed on the notice provision of Art. 90, § 11 (c) which requires that the notice "disclose expressly or impliedly" that the supplier is going to look to the general contractor for payment, is engrafting a condition precedent on to the requirements of the Act which cannot be inferred from the clear language of the Statute and which the Legislature never intended to incorporate into the Act. Likewise, such an interpretation runs contrary to the policy of liberal construction which both the Federal courts as well as this Court have stated should be applied to such legislation. The adoption of such a restrictive interpretation places one more burden on the supplier with which he must technically comply, while at the same time we do not believe the absence of such a requirement exposes the contractor to any additional risks. In *Ruberoid Co. v. Glassman, supra,* we said:

> "* * * The general contractor is amply protected by his ability to pick a responsible subcontractor, prevent any assignment that would adversely affect his interests, withhold payments until materialmen had been paid, and contract for the ability to demand a payment bond from the subcontractor." 248 Md. 105-106.

Furthermore, should we assume, arguendo, that the Statute requires that the notice given by the supplier must inform the contractor of an intent on the suppliers' part to look to the contractor for payment, we think a fair reading of the letter of September 26, 1968, conveys the

312

reasonable inference of such an intent. The letter of September 26, 1968, refers to an earlier letter of June 5, 1968, wherein the supplier notified the contractor that the subcontractor was delinquent in payment and which letter evoked a response whereby the contractor sent a check for the major portion then owed by the subcontractor for supplies, made out jointly to the supplier and subcontractor. Certainly, implicit in such action on the part of the contractor was the recognition that the supplier was looking to it for payment. That the letter of September 26, 1968, was not similarly construed and failed to evoke a similar response runs counter to logic.

The appellees rely to a great extent on *Bowden v. United States,* 239 F. 2d 572 (9th Cir. 1956), which was the progenitor of *Baehner.* Although in *Bowden,* the Court established the principle that the supplier must "inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill," it is interesting to note that in that case there was no notice at all from the supplier to the contractor. Factually it is readily distinguishable from the case at bar. Again, what we have already said regarding the *Baehner* case would apply with equal force to the rationale of *Bowden.*

Federal cases which in general have taken a more liberal approach to the construction of the Miller Act than *Bowden* or *Baehner* are *McWaters and Bartlett v. United States,* 272 F. 2d 291, 294 (10th Cir. 1959) (wherein the Court said, "But while the Act requires written notice it does not require notice in any particular form.") ; *United States v. Peerless Casualty Co.,* 255 F. 2d 137, 142, 143 (8th Cir. 1958) ;[1] *Houston Fire and Casualty Co. v. United States,* 217 F. 2d 727, 730 (5th Cir. 1954) ; and

1. "* * * The doctrine to which the courts are unanimously committed is that the protection of the laborers and materialmen is the dominant purpose of the Act and a liberal construction of its procedural provisions must be resorted to when necessary to effectuate that purpose." United States v. Peerless Casualty, 255 F. 2d 137, 143 (1958).

*Coffee v. United States,* 157 F. 2d 968, 970 (5th Cir. 1946.)

There remains but one more issue to consider and that is the legal significance of the dual notice requirement actually provided in the payment bond in this case.[2] The appellant concedes that it gave notice only to the contractor or "Principal" as described in the payment bond. In passing judgment on the import of the notice as set forth in the payment bond it is helpful to note that Code (1969 Repl. Vol.), Art. 90, §§ 11 (a) 2 and (b) authorizes a "board of education" to require a payment bond satisfactory to it, and in an amount "not less than fifty per centum (50%) of the total amount payable by the terms of the contract." The statutory requirement for notice as a condition precedent to suit on the payment bond is found in Art. 90, § 11 (c), which provides only that written notice be given the contractor, i.e., the "Principal" as designated in the payment bond in this case.

The idea of dual notice was an invention of the Montgomery County Board of Education and the question resolves itself into whether the Board may require a more rigid notice requirement in the bond than that provided by the Statute. We think not.

The appellees in arguing this issue rely on *Continental Casualty Co. v. C. O. Brand, Inc.,* 355 F. 2d 969 (5th Cir. 1966) and present it as a case involving a similar problem. In Continental, the assignee of the suppliers brought suit against the contractor on the payment bond for materials furnished on a military housing project pursuant to the provisions of "The Capehart Military Housing Act." The supplier gave notice to the contractor of

---

2. The bond states that the obligation is subject to the following condition, among others:

"3. No suit or action shall be commenced hereunder by any claimant, a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which claim is made. . ."

the subcontractor's delinquency which satisfied the single notice provision of the Miller Act but not the dual notice requirement of Capehart Act Bonds. The Capehart Act gave the Secretary of Defense authority to prescribe the form of the bond. The claimants argued that the Miller Act provisions should control. The Court rejected their argument.

In deciding in favor of the dual notice requirement under the Capehart Act Bonds, the Court did give as one of its reasons in justifying the dual notice, as prescribed by the Secretary of Defense, the fact that the surety under a Capehart Act contract may be liable for a greater amount than under the Miller Act. In this respect there is a parallel between that case and the case at bar in that, in the instant case, the Board of Education chose to require the contractor to post a bond in the amount of 100% of the contract price instead of the 50% minimum provided by the Statute. However, this is where the similarity ends. Upon reading *Continental* it becomes apparent that the Court was of the opinion that the dual provision should control over the single notice provision of the Miller Act, primarily because of the unique and complicated financing inherent in Capehart Act contracts. Judge Wisdom writing for the Court in *Continental* repeatedly emphasized the peculiar nature of this type of public contract, stating in various parts of his opinion:

> "Although we consider Capehart projects 'public works,' what distinguishes them from the public works for which the Miller Act was designed is the absence of appropriated funds. This is the central fact in the realm of Capehart. As a result, the Secretary of Defense and the Federal Housing Commissioner found it necessary to contrive a complicated three-cornered legal structure: (1) Instead of a prime contractor, there is an 'eligible bidder' who receives not a contract but a 'letter of acceptability' which he undertakes to carry out at the

risk of losing his security. (2) The 'mortgagor-builder' is a nominal obligee. (3) The 'lender' mortgagee is the only authentic obligee; and, upon default, since the mortgagee may call upon the FHA for its full insurance coverage, the rights of the obligees may be assigned to the FHA. Within this context, the Secretary of Defense, working closely with the FHA Commissioner, fashioned a bond suitable for the elaborate and unique financing scheme established in the Act. * * *."

\* \* \*

"* * * Capehart Bond provisions should prevail, when the provisions are reasonable and peculiarly suited to Capehart projects."

\* \* \*

"* * * The principal basis for the decision here is that in establishing a unique financial arrangement over which the Secretary of Defense had broad control Congress granted implied authority to the Secretary to establish reasonable notice provisions peculiarly suitable for a Capehart project. * * *." 355 F. 2d 976-977.

It is clear that the thread of reasoning woven through *Continental* is lost in the situation presented by the case at bar. Here we have an uncomplicated public works' project which we think is typical of the subject matter to which the Legislature addressed itself in passing Article 90, § 11.

On the other hand, it is obvious from reading *Continental* that Congress recognized that it was dealing with a highly sophisticated financial arrangement in Capehart project contracts. Indeed, *Continental* cites portions of the Congressional Committee Hearings on HR 10157, concerning amendments to the Capehart Act, at which recommendations from the Secretary of Defense were received explaining the necessity for the particular type bond advocated by the Defense Department. There is noth-

ing of similar import placing a gloss of uniqueness on the public works contracts which Art. 90, § 11 was intended to cover. We think that the notice provision provided by Art. 90, § 11 (c) sets forth a clear and unambiguous statutory requirement which should not be rendered more stringent in the payment bond by varying the provisions of the Statute. Conceivably, were a contrary view adopted, the protection which the Maryland Statute seeks to provide for suppliers of material would be considerably diluted by public agencies drawing payment bonds imposing even more severe requirements as to notice or other conditions precedent than those appearing in the instant case. Our thinking on this point is reflected in *Charles City v. Rasmussen,* 232 N. W. 137 (Iowa, 1930), wherein the court stated:

> "The bond in this case is a statutory bond, and the liability of the parties to the bond must be measured by the statute and not the wording of the bond * * *. We have said repeatedly that any addition to such bond will be treated as surplusage, and any omission of the provisions of the statute will be read into the bond." 232 N. W. 137 at 139.

In comport with the views stated in this opinion the judgment of the lower court will be reversed and pursuant to Maryland Rule 875 a, we shall enter judgment for the appellants in the amount of $3,151.97 with interest dating from January 20, 1970, the date that judgment was rendered in the lower court. The costs in the trial court and in this Court are to be paid by the appellees.

*Judgment reversed, judgment in favor of the appellants against the appellees entered for $3,151.97 with interest from January 20, 1970; costs in this court and in the trial court to be paid by the appellees.*