MAYOR AND CITY COUNCIL OF BALTIMORE *v.*
FIDELITY AND DEPOSIT COMPANY OF
MARYLAND ET AL.

[No. 160, September Term, 1977.]

*Decided April 25, 1978.*

---

*Motion for reconsideration filed May 23, 1978; denied May 31, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Allan B. Blumberg, Chief Solicitor,* with whom were *Benjamin L. Brown, City Solicitor, Otho M. Thompson, Chief Solicitor, James F. Garrity* and *Merle Ann Achinstein, Assistant City Solicitors,* on the brief, for appellant.

*Howard G. Goldberg,* with whom were *Smith, Somerville & Case* on the brief, for Ballard-Diver Joint Venture, part of appellees. *B. Conway Taylor, Jr.,* with whom were *W. Hamilton Whiteford, George J. Bachrach* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for Fidelity and Deposit Company of Maryland, other appellee.

ORTH, J., delivered the opinion of the Court.

The background of this case was set out in *American Structures v. City of Balto.,* 278 Md. 356, 364 A. 2d 55 (1976):

> "In May, 1974, the [Mayor and City Council of Baltimore (the City)] entered into a contract with American Structures, Inc. (the Contractor) for the construction of a storm drain outfall, in accordance with the specifications prepared by the Maryland

State Highway Administration (the Highway Administration).

"Work commenced in September, 1974, and thereafter the Contractor encountered subsurface conditions which allegedly differed substantially from those contemplated by the contract documents. Apparently in reliance on a provision of contract documents which required the giving of prompt notice should conditions be identified which increased the character of the work to be performed under the contract, the Contractor, in January, 1975, notified the City that it was confronted with such a situation. The City apparently directed the Contractor to proceed with the work.

"When negotiations looking toward an adjustment of the contract price proved inconclusive, in September, 1975, the Contractor brought a declaratory judgment action in the Circuit Court of Baltimore City against the City and the Highway Administration, which had as its purpose the construction of the contract provisions. Both defendants interposed the defense of sovereign immunity, the City by a motion to dismiss, and the State by a motion raising preliminary objection. From an order dismissing the action, the Contractor has appealed." *Id.* at 358.

We determined that "municipalities and counties have been regularly subject to suit in contract actions, whether the contracts were made in performance of a governmental or proprietary function, as long as the execution of the contract was within the power of the governmental unit." *Id.* at 359-360. We concluded "that on the record before it the trial court was quite correct when it granted the State's motion raising a preliminary objection, but that the City's motion to dismiss should have been denied." *Id.* at 360. Affirming the order in part and reversing it in part, we remanded the case for further proceedings. *Id.* at 361.

Fidelity and Deposit Company of Maryland (the Surety), a

corporation authorized to serve as a compensated surety, executed a bond required by the City as a condition to the award of the contract. The Contractor ceased work under the contract on 1 June 1976, and formal default by it and notification to the Surety occurred on 26 June 1976. On 1 September the Surety filed a petition in equity in the Circuit Court of Baltimore City (the action was subsequently transferred to the law side, Superior Court of Baltimore City) for a declaratory judgment and other relief (the Suit) against the Contractor, the City, James H. Graves and Ellen Graves, his wife, and Louis Tabor and Aline Tabor, his wife (the Indemnitors), and three representative claimants under the bond for work done and materials provided for the project (the Claimants). The City filed a third party claim against Ballard-Diver Joint Venture (Ballard-Diver), which had allegedly performed design engineering services relating to the project for the City, seeking indemnity for all "sums that may be adjudged due to (the Surety)." Ballard-Diver demurred to the third party claim.

Count One of the Suit sought, in essence, a determination with respect to the validity of the opposing contentions of the Contractor as principal and the City as obligee, and the rights and obligations of the Surety based on each determination. Count Two sought an interpretation of the surety bond in the light of the "Little Miller Act," (the Act), now codified as Maryland Code (1974, 1977 Cum. Supp.) § 9-113 of the Real Property Article. With respect to Count Two, the Surety filed a motion for partial summary judgment and for declaration of rights.

On 22 June 1977 the trial court sustained the demurrer of Ballard-Diver without leave to amend and granted the Surety's motion. On 11 July the City wrote the court requesting clarification of the order with regard to claims of sub-contractors. On 13 July the court replied that its order of 22 June was correct and "accordingly should stand." It set out its reasons for so ruling. On 21 July the City noted an appeal from the order of 22 June. Of course, the order of 22 June was not immediately appealable unless the trial court, in accordance with Maryland Rule 605 a, expressly

determined that there was no just reason for delay and expressly directed the entry of final judgment. *Tedrow v. Ford Motor Co.,* 260 Md. 142, 144, 271 A. 2d 688 (1970); *Harkins v. August,* 251 Md. 108, 110-111, 246 A. 2d 268 (1968). The City ultimately realized this and on 3 August filed a motion for the entry of a final judgment as required by Rule 605 a. The court, "upon an express determination ... that there is no just reason for delay in appealing the ruling of the Court of June 22, 1977," ordered "that final judgment be entered granting the Motion of Fidelity and Deposit Company of Maryland for partial summary judgment and declaration of rights as stated in the Ruling of the Court dated June 22, 1977." The City thereupon again noted an appeal to the Court of Special Appeals. We granted a writ of certiorari before decision by that court.

I

Ballard-Diver moved in its brief to dismiss the appeal from that part of the order of 22 June 1977 which sustained its demurrer without leave to amend. Maryland Rule 1035 b 1 and 1036 d. It is manifest that the order of 3 August, issued to permit the appeal as contemplated by Rule 605 a, did not contain an express direction for the entry of final judgment in favor of Ballard-Diver, but dealt only with the Surety's partial summary judgment and declaration of rights. Therefore, that part of the order affecting Ballard-Diver remained interlocutory, and the City's appeal therefrom was premature. *Harkins v. August, supra.* We grant Ballard-Diver's motion and dismiss the appeal as to that appellee.

II

For almost two decades it has been the statutory requirement that before any contract exceeding $5,000 for the construction of any public work of any city is awarded to any person, he shall furnish to the city the following bonds which shall become binding upon the award of the contract:

"(1) A performance bond executed by a surety

company authorized to do business in this State satisfactory to the public body awarding the contract, and in such amount as it shall deem adequate, for the protection of the public body.

"(2) A payment bond executed by a surety company authorized to do business in this State satisfactory to the public body for the protection of all persons supplying labor and materials to the contractor [the person awarded the contract] or his subcontractor in the prosecution of the work provided for in the contract for the use of each such person. The bond shall be in the amount not less than fifty per centum (50%) of the total amount payable by the terms of the contract." Maryland Code (1957, 1964 Repl. Vol.) Art. 90, § 11 (a).[1]

The required bonds shall be payable to the City and shall be

---

1. The statute also encompassed a contract exceeding $5,000 for the construction, alteration, or repair of any public building or public work or improvement of the State of Maryland, or of any county, municipal corporation, town, board of education or other political subdivision, public authority, or public instrumentality, or any officer, board, commission, or agency of any of the foregoing. Maryland Code (1957, 1964 Repl. Vol.) Art. 90, § 11 (a).

Chapter 10, Acts 1959, repealed former § 11 and enacted a new section in lieu thereof. The former section, which derived from Acts 1918, ch. 127, provided for payment for labor and materials where a contract performance bond was given to the State or any of its agencies. Chapter 349, Acts 1972 repealed § 11 (a) effective 1 January 1973 and enacted the provisions as Art. 21, § 9-112 (a). Art. 21, § 9-112 (a) was repealed by chapter 12, Acts 1974 and the provisions were enacted as § 9-112 (a) of the Real Property Article. Section 9-112 of that article was renumbered as § 9-113 by chapter 349, Acts 1976. Hereinafter in this opinion, to avoid confusion, the citation of the statute shall be to its present code designation, Maryland Code (1974, 1977 Cum. Supp.) § 9-113 (a) of the Real Property Article. It is known as the "Little Miller Act" and shall be referred to as "the Act."

The only changes in subsection (a) since its enactment in 1959 were additions to paragraph (2). Acts 1967, ch. 262 added as a third sentence: "Any contractor covered by such a bond shall not be required to furnish a waiver of mechanics' liens to the State." Acts 1968, ch. 525 added as a last sentence: "Any contractor prior to receiving a progress or final payment under a contract covered hereunder shall certify in writing that he has made payment from proceeds of prior payments, and that he will make timely payment from the proceeds of the progress or final payment then due him, to his subcontractors and suppliers in accordance with his contractual arrangements with them." Acts 1970, ch. 275 inserted "including lessors of equipment to the extent of the fair rental value thereof," immediately after "for the protection of all persons supplying labor and materials" in the first sentence.

approved by its attorney as to form. Code (1974, 1977 Cum. Supp.) § 9-113 (e) of the Real Property Article.[2]

We pointed out in *State Hwy. Adm. v. Transamerica Ins.,* 278 Md. 690, 697, 367 A. 2d 509 (1976), quoting *Montgomery County v. Glassman,* 245 Md. 192, 201, 225 A. 2d 448 (1967) and citing *Hamilton v. Board of Education,* 233 Md. 196, 200, 195 A. 2d 710 (1963), that the purpose of the payment bond, based on the statute, is to protect subcontractors and materialmen on public projects where they have no lien on the work done. We observed in *Transamerica,* at 697, that the purpose of the performance bond, in the words of the statute, " 'is for the protection of the public body,' " here, the City. "Its statutory object is to assure the construction and completion of the work contracted for. That is, the purpose of the performance bond, as its name implies, is to secure to the [City] the performance of the contract for the construction of the public work." *Id.*

### III

Only one bond was executed with respect to the contract here. The Surety's allegation in its petition for declaratory judgment that it executed the bond "required by and drafted by the City and included in its bid proposal, which bond was to be executed as a condition to the awarding of the contract . . ." was admitted by the City in its answer.[3]

---

2. Code (1974, 1977 Cum. Supp.) § 9-113 (e) of the Real Property Article reads in its entirety:

"In the case of contracts of the State of Maryland, or any board, commission, or agency thereof, the aforesaid bonds shall be payable to the State of Maryland and shall be approved by the Attorney General as to form. In the case of all other contracts subject to this section, the bonds shall be payable to the public body concerned, and shall be approved by its attorney as to form."

It is the same as former § 9-112 (e) of that article, former Art. 21, § 9-112 (e) and former Art. 90, § 11 (e).

3. The Surety's allegation that the bond was executed in reliance upon the contract and the obligations jointly and severally undertaken by the Indemnitors and the Contractor by an Indemnity Agreement was also admitted by the City.

A copy of the bond is in the joint record extract attached as exhibit A to the Surety's declaration. We note that although it calls for execution by both the Contractor and the Surety, it appears that only the Surety executed it.

The bond bound the Contractor, as principal, and the Surety, as surety, unto the City in "the full and just sum" of $5,346,278, the amount of the contract price for the project. The bond obligated the Contractor to "well and truly perform, fulfill and comply in all respects the undertakings, covenants, terms, conditions and agreements" of the contract for the construction of the project. The City was indemnified and saved harmless

"against and from all costs, expenses, damages, injury or loss to which the [City] may be subjected by reason of any wrongdoing, misconduct, want of care or skill, negligence or default upon the part of the said [Contractor] or in any manner arising directly or indirectly from any and all causes whatsoever, in or about the execution or performance of the Contract. . . ."

The bond provided that the Contractor

"shall promptly settle, pay, and satisfy, all claims, demands, and suits made or instituted against the said [Contractor] by any and all persons, firms and/or corporations for the nonpayment of labor performed in and about the work to be done under the Contract for which the said [Contractor] is liable, including any and all extra work that may become part of the Contract, for all material furnished, installed, erected and incorporated in said work for which the said [Contractor] is liable, and shall save and keep harmless the said [City] against and from all losses to it from any cause whatsoever . . . in the matter of construction of all the aforementioned. . . ."

If this all was done, then the obligation was void; otherwise it remained "in full force and virtue at law." The bond concluded with a proviso:

"IT IS PROVIDED HOWEVER, That no person, firm and/or corporation other than the said [City] shall have any right, title or interest in, to and/or

> under this instrument until and after the said [City] shall have been fully paid and/or reimbursed for any and all costs, expenses, damages and/or losses of every kind, nature and description sustained by it or which may be sustained by it and as to which it is or may be entitled to indemnification under the terms of this instrument."

Why the City, in the face of the Act, drafted, approved and included this document with its bid proposals instead of clearly complying with the statute is difficult to comprehend. The surety apparently executed the document because the City had approved it as the bond to be furnished with the bid. In any event, it became binding upon the award of the contract, and upon default in the contract by the Contractor the parties inevitably became at odds as to their rights and obligations under it vis-à-vis the statutory prescriptions.[4]

The Surety and the City agree that the bond here was intended to comply with the Act. They also agree that, therefore, it is to be construed as imposing the obligations established by the Act. This is in accord with the view expressed by this Court in *Westinghouse Electric v. Minnix,* 259 Md. 305, 316, 269 A. 2d 580 (1970) in which we said that the following statement in *City of Charles City v. Rasmussen,* 210 Iowa 841, 847, 232 N. W. 137 (1930) reflected our thinking:

> "The bond in this case is a statutory bond, and the liability of the parties to the bond must be measured by the statute and not the wording of the bond * * *. We have said repeatedly that any addition to such bond will be treated as surplusage, and any omission

---

4. We observe that the Act expressly provides:

"Nothing in this section shall be construed to limit the authority of the State of Maryland or other public body hereinbefore mentioned to require a performance bond or other security in addition to those, or in cases other than the cases specified in subsection (a) of this section." Code (1974, 1977 Cum. Supp.) § 9-113 (b) of the Real Property Article.

As we have indicated, the record does not reflect that the City required any other bond or security.

of the provisions of the statute will be read into the bond."

Thus, the bond here is to be construed as comprising both a performance bond and a payment bond. The issue is what is its coverage, respectively, as a performance bond and as a payment bond.

## IV

In granting the Surety's motion for partial summary judgment and declaration of rights as to Count Two of the declaration, the court first found that "the total liability of [the Surety] on the bond in question was and is $5,346,278.00, the bond on its face binding [the Surety] 'in the *full* and just sum of Five Million, three hundred forty-six thousand, two hundred seventy-eight ($5,346,278.00) dollars.' (emphasis added)." We agree. "[T]he liability of a surety upon his bond is dependent upon his covenants and agreements, or, in other words, that an ordinary conventional bond is a simple contract...." *Women's Hospital v. Fid. & Guar. Co.,* 177 Md. 615, 619, 11 A. 2d 457, 459 (1940). "The cardinal rule in the interpretation of bonds, as in the interpretation of all written contracts, is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles." *Levy v. Glens Falls Indem. Co.,* 210 Md. 265, 273, 123 A. 2d 348 (1956). "It is elementary that a surety on a bond is bound only to the extent and under the circumstances stipulated in the obligation." *Levy* at 271. "Nothing can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no farther." *Miller v. Stewart,* 9 Wheat. 680, 702-703, 6 L. Ed. 189 (1824), quoted in *Art. Etc. Corp. v. Fidelity Con. Corp.,* 194 Md. 110, 116, 69 A. 2d 808 (1949). *See Transamerica Ins.,* 278 Md. at 700; *Duffy v. Buena Vista Ice Co.,* 122 Md. 275, 277-278, 90

A. 53 (1914); *Booth v. Irving Nat. Exch. Bank,* 116 Md. 668, 672, 82 A. 652 (1911).

There is no statute authorizing the penalty of the bond to be in excess of that specified therein. The Act requires that the payment bond shall be in the amount not less than 50% of the total amount payable by the terms of the contract. § 9-113 (a) (2). The amount of the performance bond shall be such as the public body awarding the contract shall· deem adequate for its protection. § 9-113 (a) (1). The City suggests that its charter establishes what it had deemed to be adequate for its protection. Charter of Balto. City (1964), Art. VI, § 4 (g), as amended by Res. No. 5 (1968), ratified 3 November 1970, deals with the contracting for the construction of any public work for the City. A bid for such project in the amount of $5,000 or more shall be accompanied by a certified check, a bank cashier's check or a bank treasurer's check of the bidder upon some clearing house bank in an amount provided by ordinance or by the bid specifications or by an order or regulation of the municipal agency for whose use the bids are made and the contract entered into. "The successful bidder shall promptly execute a formal contract to be approved as to its form, terms and conditions by the City Solicitor, and such bidder shall also execute and deliver to the Mayor a good and sufficient bond to be approved by the Mayor *in the amount of the contract price.*" (Emphasis added).[5] It follows, the City claims, that the performance aspect of the bond must be in the amount of the contract price, in this case, $5,346,278. By this reasoning the total obligation of the Contractor and the Surety could be $8,019,417. In other words, the liability of the principal and surety to the City would be the amount of the damages for failure to perform the contract up to $5,346,278 and the liability to the person supplying labor and materials would be the amount due such persons up to a total of $2,673,139.

---

5. Upon execution of the contract and bond by the successful bidder, the check submitted with his bid shall be returned to him. Charter of Balto. City (1964), Art. VI, § 4 (g) as amended.

We reject this notion of the City. It is clear that under *Minnix, supra,* the absolute priority of the City, spelled out in the proviso of the bond, is surplusage. By the mandate of the Act, "not less than fifty per centum (50%) of the total amount payable by the terms of the contract," must be for the protection of all persons supplying labor and materials to the contractor or his subcontractor in the prosecution of the work provided for in the contract. *Minnix* teaches that this requirement of the Act shall be read into the bond. The consequence is that the bond here must be interpreted as providing that not less than $2,673,139 shall be allocated as a payment bond, as that sum is 50% of the contract price. The City Charter does not refer to a performance bond and a payment bond. The bond here was in an amount equal to the contract price and, thus, in that regard, complied with the Charter provision. There was nothing inconsistent with the penalty stated in the bond and the Charter. We observe that if there were a conflict between the Charter and the public general law, the public general law prevails. *Wilson v. Bd. of Sup. of Elections,* 273 Md. 296, 301, 328 A. 2d 305 (1974).

Having determined that the total liability under the bond could not exceed $5,346,278, the trial court interpreted the bond in light of the Act:

"Since this was a statutory bond required by Real Property Article, Section 9-112 (now 9-113), the amount of the total bond apportioned to the payment bond cannot be less than fifty percent (50%) of the contract price, here $2,673,139.00, which amount cannot be subject to any condition purporting to give the Mayor and City Council of Baltimore priority over the persons furnishing labor and materials, the Little Miller Act having been enacted to protect that class of persons. The difference between the total liability of Fidelity and Deposit Company of Maryland ($5,346,278.00) and the amount required by statute as a payment bond ($2,673,139.00) is the amount of the performance bond ($2,673,139.00),

over which amount the Mayor and City Council of Baltimore can claim priority for any losses incurred under the contract which are covered by the bond."

The City did not feel that the opinion went far enough in that it did not "seem to address the question of the possibility of the claims of sub-contractors being less than $2,673,139.00 and the City's claim on the performance aspect being greater than that amount." It presented a hypothethical situation:

"For instance, suppose the total amount of the sub-contractor's claim is $1,000,000.00 and the total claim of the City on the performance aspect is $4,000,000.00. Your opinion seems to say that the sub-contractors will get a total of $1,000,000.00 but the City will only get $2,673,139.00 and, therefore, [the Surety] would only be paying out $3,673,139.00 when the Bond clearly states that it is obligated 'in the full and just sum of $5,346,278.00.' "

The court affirmed its ruling and offered this explanation:

"The Bond as signed did not conform to the requirements of Real Property Article, Section 9-112 (now Section 9-113). It was therefore necessary to read into that document the terms required by that Legislation. That Statute requires two bonds, a performance bond, the amount of which is left up to the discretion of the agency involved, and a payment bond, which must be at least 50% of the contract amount. If two individual bonds had been executed in conformity with the requirements of that Statute, the Mayor and City Council could not claim under the payment bond, nor could any supplier of materials or labor claim under the performance bond regardless of the fact that after either bond was executed no claims were payable on one bond while on the other the claims against it exceeded the maximum liability of the surety. Accordingly the maximum amount recoverable by the City under the Bond dated May 30, 1974 is $2,673,139.00. The

maximum amount recoverable by suppliers of materials of labor under that Bond is $2,673,139.00."

We agree that under the Act the bond executed here must be construed as protecting the City as to the performance of the contract for construction of the project and as protecting persons for the amounts due them as suppliers of labor and materials for the project. In other words, the bond must be considered as having a performance aspect and a payment aspect. We also agree that the paramount purpose of the Act concerned the payment aspect. We observed in *Minnix,* 259 Md. at 312, n. 1:

" ' * * * The doctrine to which the courts are unanimously committed is that the protection of the laborers and materialmen is the dominant purpose of the Act and a liberal construction of its procedural provisions must be resorted to when necessary to effectuate that purpose.' United States v. Peerless Casualty, 255 F. 2d 137, 143 (1958)."

The rationale of our holding in *Minnix* was that "the protection which the Maryland Statute seeks to provide for suppliers of material" should not be diluted. *Id.* at 316. In the light of this, we do not agree that the penalty of the bond here must be divided down the middle. The bond is silent as to how much of the total amount for which the principal and surety is liable shall be applied to the performance aspect and how much shall be applied to the payment aspect. But, although a performance bond may be in any amount at the discretion of the public body, *i.e.,* less than, equal to, or more than the amount of the contract for the project, a payment bond shall not be in an amount less than 50% of the total amount payable by the terms of the contract. Thus, it may be in any amount accepted by the parties which is equal to or greater than one-half the contract price for the project. In other words, as to the payment aspect of the bond at issue, the Act requires and supplies a provision that the payment liability shall not be less than $2,673,139, but it does not preclude or supply a provision prohibiting a payment liability in excess of that sum

up to a total liability agreed upon, namely, the contract price of $5,346,278. As to the performance aspect of the bond, the Act does not require or supply a provision for a penalty in any specified sum, and, thus, does not set that penalty amount at $2,673,139.

It follows under the terms of the bond and the provisions of the Act that the Surety by executing the bond and the City by approving it are in the following position. The suppliers of labor and material are entitled to be paid in full what is due them up to a total sum of $5,346,278. If their claims are in excess of that amount, they shall receive a proportionate share of that sum. If their claims are less than the total penalty amount, but more than 50% thereof, the City is entitled to receive what is due it for nonperformance of the contract up to the difference between the amount paid the suppliers and the total liability. If the claims of the suppliers are less than 50% of the total liability, the City is entitled to receive what is due it for nonperformance of the contract up to 50% of the total liability, namely $2,673,139. This is the clear liability of the parties measured by the statute. Because the statute prohibits that the payment liability be less than 50% of the contract price, we cannot read a provision in the bond permitting an encroachment of the required payment aspect amount to satisfy damages for non-performance. Our determination is at variance with the ruling of the trial court only with regard to the possible limit of liability under the payment aspect of the bond.

In reviewing the propriety of the trial court's action on a motion for summary judgment, the appellate court is concerned with whether there was a dispute as to any material fact, and if not, whether the moving party was entitled to judgment as a matter of law. *Rooney v. Statewide Plumbing,* 265 Md. 559, 563-564, 290 A. 2d 496 (1972); *Shatzer v. Kenilworth Warehouses,* 261 Md. 88, 95, 274 A. 2d 95 (1971); *Brown v. Suburban Cadillac, Inc.,* 260 Md. 251, 255, 272 A. 2d 42 (1971); Maryland Rule 610. On appeal, the City does not claim that there was a dispute as to any material fact, and we find that the Surety was entitled to partial summary judgment as a matter of law. The order of the trial court of

22 June 1977 granting the motion for partial summary judgment is affirmed. The declaration of rights contained therein is modified in accordance with this opinion, and as modified, is affirmed.

> *Appeal dismissed as to Ballard-Diver Joint Venture.*
> *Order of 22 June 1977 affirmed as to grant of partial summary judgment and modified as to declaration of rights in accordance with this opinion and as modified is affirmed.*
> *Costs to be paid by appellant.*