**UNITED STATES of America for the use of MODERN ELECTRIC, INC. Plaintiff,**

v.

**IDEAL ELECTRONIC SECURITY COMPANY, INC., et al., Defendants.**

**Civ. A. No. 94–0385 PLF.**

United States District Court, District of Columbia.

Nov. 15, 1994.

Michael P. Darrow, Annapolis, MD, for plaintiff.

David G. Bryton, Washington, DC, for Intern. Fidelity Ins. Co.

*MEMORANDUM OPINION AND ORDER*

FRIEDMAN, District Judge.

This matter is before the Court on the motion of Defendant International Fidelity Insurance Company ("IFIC") for summary judgment against Plaintiff Modern Electric, Inc. ("Modern"). Modern filed an opposition to the motion, and the Court heard argument. Following a subsequent status conference held primarily to discuss other aspects of the case, Modern filed a supplemental response to IFIC's motion. The Court is persuaded that Defendant IFIC's motion for summary judgment should be granted.

## I.  FACTS

The contract underlying this dispute is between the United States Army and Ideal Electronic Security Co., Inc. ("Ideal"), the government's prime contractor, for work to be performed at Walter Reed Army Hospital (the "Walter Reed Contract"). The Walter Reed Contract is a multi-year contract with provisions for a base year and the option to extend the contract for two additional years upon the execution of a contract modification.

The Walter Reed Contract is governed by the Miller Act, 40 U.S.C. §§ 270a, *et seq.*, which requires government contractors to obtain payment and performance bonds in order to ensure payment by the contractor to subcontractors for work performed. 40 U.S.C. § 270a(a). As originally written, the contract specifications required the contractor awarded the contract by the Department of the Army to obtain a payment bond and a performance bond covering the base year and each possible option year. That requirement would have required Ideal to purchase

a payment bond with a penal sum sufficient to cover all possible work over the potential three-year period of the contract. On May 30, 1991, however, the Army issued an Amendment of Solicitation for the Walter Reed Contract. The Amendment, which is a part of the Contract, provided that "[t]he Performance and Payment Bonds will be separate for the base year and each option year. If option is exercised, the Contractor shall be required to provide the appropriate Performance and Payment Bonds at that time." Def.Ex. A–9. Modern, Ideal's subcontractor, says it was not aware of the modified bond requirements incorporated into the Contract.

The Walter Reed Contract, as modified, was ratified by Ideal, the Small Business Administration and the Walter Reed Army Medical Center on July 29, 1991. IFIC executed a surety payment bond on behalf of Ideal on September 5, 1991. Payment Bond No. 873427–91 ("the Bond"). The Payment Bond obligated IFIC to make payments to the United States for the benefit of subcontractors, including Modern, in the event that Ideal failed to meet its obligations under the Contract. Although the Bond was not executed until September 5, 1991, it states that it covers the July 29, 1991, Walter Reed Contract. Def.Ex. A–9. The penal sum of the Bond is $206,495.60. On July 21, 1992, the Army exercised its option and extended the Walter Reed Contract for an additional year. Def.Ex. G–1.

Pursuant to the Miller Act, 40 U.S.C. § 270b, Modern seeks payment from IFIC under the Bond to recover amounts allegedly due for services performed by Modern as Ideal's subcontractor. IFIC seeks summary judgment against Modern on several grounds, including the fact that the Bond

only covered work performed during the base year of the Walter Reed Contract and that IFIC therefore only guaranteed payment for work performed during that year. Modern has admitted that its claims against IFIC under the Bond relate solely to work performed after the first year of the contract, but it argues that the Bond covers all work performed by Modern.[1]

## II. ANALYSIS

Under Rule 56, Fed.R.Civ.P., summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Disputed material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "In cases in which the dispositive issue involves the construction of a contract, summary judgment may be appropriate if the provisions of the contract are unambiguous." *Davis v. Chevy Chase Financial Ltd.,* 667 F.2d 160, 169 (D.C.Cir.1981); *see America First Inv. Corp. v. Goland,* 925 F.2d 1518, 1520 (D.C.Cir.1991); *Farmland Industries, Inc. v. Grain Bd. of Iraq,* 904 F.2d 732, 736 (D.C.Cir.1990). Furthermore, it is settled that whether a contract term is ambiguous is a question to be determined by the court. *Carey Canada, Inc. v. California Union Ins. Co.,* 708 F.Supp. 1, 4 (D.D.C.1989).[2]

Construction of the terms of the Bond and the Walter Reed Contract are pivotal because the parties disagree about the duration of the IFIC payment bond's coverage for

---

1. There is an issue argued by the parties as to whether the relationship between Ideal and Modern was truly a prime contractor-subcontractor relationship or whether they were in fact joint venturers. In view of the Court's disposition of the summary judgment motion, it is unnecessary to deal with this issue.

2. In divining the meaning of contract terms, the Court is not bound by the four corners of the agreement. The party moving for summary judgment and the party opposing summary judgment may submit extrinsic evidence that gives

color to the words of the agreement. *UMWA 1974 Pension v. Pittston Co.,* 984 F.2d 469, 473 (D.C.Cir.1993). Plaintiff suggests that extrinsic evidence related to Ideal's, the Army's and IFIC's understanding of the Bond is irrelevant because Plaintiff was not a party to those negotiations. Because the Court finds that the terms of the Bond and the terms of the Walter Reed Contract are unambiguous and that reference to extrinsic evidence is unnecessary, the Court need not address this issue.

work performed by Modern on the Walter Reed Project. It is undisputed that the Bond does not recite an expiration date, but IFIC claims that the Bond covered only one year and that it expired on July 29, 1992, because the Walter Reed Contract was ratified one year earlier, on July 29, 1991. Modern has conceded that all of its claims relate to work performed after July 29, 1992, but contends that the Bond covers all work performed under the Walter Reed Contract, as extended by the Army. The Court agrees with IFIC.

The Bond issued by IFIC lists Ideal Electronic Security Company as Principal and IFIC as Surety. It expressly refers to the Walter Reed Contract with Modern, Contract No. DADA15–91–D–0029, and recites a penal sum of $206,495.60. The Bond further states that "the Principal and Surety(ies), are firmly bound to the United States of America ... in the above penal sum...." The Bond then goes on to state:

> The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and *any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.*

Def.Ex. A–9 (emphasis added).

■ Solicitation DADA15–91–R0–0014, a part of the Contract which contains the bonding specifications for the Walter Reed Project, states:

> *The Performance and Payment Bonds will be separate for the base year and each option year.* If option is exercised, the contractor shall be required to provide the appropriate Performance and Payment Bonds *at that time.*

Def.Ex. A–9 (emphasis added). As noted, the terms of the Contract and the Bond are both pivotal to the question before the Court.[3]

Modern argues that all modifications to the Contract that relate to the original tasks set forth in the July 29, 1991 Contract are covered by the Bond. Therefore, it maintains that the Bond covers work performed by Modern after the Army exercised its option and extended the Contract. This argument fails because the Bond unambiguously indicates that IFIC's obligation only covers work performed during the original term of the Walter Reed Contract and "authorized modifications" of the Contract that "subsequently are made." The term "subsequently" necessarily refers to when the modifications are made, not when they are authorized. Thus, the Bond covers only modifications that were authorized at the time the Bond was executed, but implemented subsequent to execution of the Bond.

The Army's exercise of its option to extend was not such a modification. If the Bond were interpreted otherwise, IFIC would be binding itself to cover material changes in the Contract that could greatly increase its risk, without increasing either the premium or the penal sum. *Cf. United States Fid. & Guaranty Co. v. United States for the Use of Smoot*, 298 F. 365, 368 (D.C.Cir.1924). The Army did not exercise the option to extend the Contract until July 21, 1992. Its decision to exercise the option to extend beyond the base year was not an authorized modification at the time the Bond was issued.[4]

---

3. In interpreting the language of the Bond, the Court must bear in mind that "[a] contractor's bond should be construed in connection with the contract with which it was executed and the statute requiring it." *State for Use and Ben. of J.D. Evans Equip. Co. v. Johnson*, 83 S.D. 444, 160 N.W.2d 637, 639 (1968); *see United States v. Reliance Ins. Co.*, 799 F.2d 1382, 1386 (9th Cir. 1986); *Mayor & City Council v. Fidelity & Dep. Co.*, 282 Md. 431, 386 A.2d 749, 754–55 (1978); *State Hwy. Administration v. Transamer. Ins. Co.*, 278 Md. 690, 367 A.2d 509, 519–20 (1976).

4. IFIC has provided the Court with affidavits and documentary evidence in support of its argument that the parties to the Bond did not intend the Bond to cover work performed after the first year of the Contract. Plaintiff has also submitted affidavits and documents. Reference to this extrinsic evidence is unnecessary, however, because the language of the Bond is unambiguous and the extrinsic evidence does not suggest that the Army's exercise of its option was authorized at the time the Bond was issued.

The Court's interpretation of the language of the Bond is consistent with the language of the Walter Reed Contract, which is referred to in the Bond. *See Dealers Elec. Supply v. U.S. Fid. & Guar. Co.,* 199 Neb. 269, 258 N.W.2d 131, 134 (1977) (where prime contract is referred to, the contract and the bond must be read together in determining whether a subcontractor is afforded protection by the bond). The Contract states that the bond "will be separate for the base year and each option year." It further provides that if the Army exercises its option to extend the Contract, "the contractor shall be required to provide the appropriate Performance and Payment Bonds *at that time.*" (Emphasis added.) By requiring that Ideal, upon the Army's exercising of an option year, obtain additional bonds "at that time," the parties obviously intended that IFIC's Bond would cover only the base year of the Contract. The Bond thus provides coverage only for the first year.

■ Whether Ideal failed to comply with the contract requirement that it obtain a new bond for the option year once the Army exercised the option is a separate question, wholly irrelevant to the motion before the Court. The fact is that bonding the option years was not a requirement of the Walter Reed Contract at the time the IFIC Bond was issued in September 1991. Both the language of the Bond and the language of the underlying contract requiring the Bond indicate that the Bond only provides protection for subcontractors who performed work on the Walter Reed Project during the base year and that a new payment bond would be required for subsequent years if the Army exercised its option to extend the Contract. "It is elementary that a surety on a bond is bound only to the extent and under the circumstances stipulated in the obligation.... [T]he liability of a surety is not to be extended, by implication, beyond the terms of his contract." *Mayor & City Council v. Fidelity & Dep. Co.,* 282 Md. 431, 386 A.2d 749, 754 (1978) (citations and internal quotations omitted).

Exhibit 5 of Modern's response to the summary judgment motion contains a November 26, 1991, subcontract agreement between Modern and Ideal relating to work to be performed by Modern for Ideal in connection with the July 29, 1991, Walter Reed Contract (the base year of the Contract). That subcontract contains identical language regarding the bonding requirement as that contained in the Walter Reed prime contract. Specifically, the subcontract states in paragraph 8:

The Performance and Payment Bonds will be separate for the base year and each option year. If the option is exercised, the Subcontractor shall be required to provide the appropriate Performance and Payment Bonds at that time.

Pl.Opp.Ex. 5. Modern says it was unaware of this same language in the prime contract and argues that it does not mean what it appears to say. While it may not be appropriate to read the terms of the subcontract into the prime contractor's obligation to obtain performance and payment bonds under the prime contract, Modern's argument that the Bond at issue here is not clear and unambiguous is undermined by the identical language contained in its own contract with Ideal.

■ The Miller Act does not support a different interpretation of the Bond. Plaintiff correctly notes that the Miller Act is intended to be remedial in nature and to protect suppliers of labor and material to a federal project. As a substitute for the customary lien that gives protection to suppliers, the Act requires government contractors to post a bond guaranteeing payment to the suppliers. *Kennedy Elec. Co. v. USPS,* 508 F.2d 954, 957 (10th Cir.1974). The Act provides that "[b]efore any contract ... for the construction, alteration, or repair of any public building ... of the United States is awarded to any person ... such person shall furnish the United States [a payment] bond...." 40 U.S.C. § 270a(a).

■ Ideal or the Army may have breached its obligation under the Miller Act by failing to ensure that a new payment bond was issued to cover the option year on the Contract. That is not a reason, however, to impose an obligation on IFIC that it did not undertake to bear and for which it apparently collected no premiums. "Although intend-

ed to be remedial in nature and liberally construed, the [Miller] Act is not to be applied so as to impose wholesale liability on payment bonds." *United States for the Use and Ben. of Naberhaus–Burke, Inc. v. Butt & Head, Inc.,* 535 F.Supp. 1155, 1157–58 (S.D.Ohio 1982).

Because the Court finds as a matter of law that Payment Bond No. 873427–91, issued by IFIC to cover work performed on the Walter Reed Contract, expired on July 29, 1992, and because Plaintiff concedes that all its claims against IFIC relate solely to work performed after that date, there is no genuine dispute as to any material facts and Defendant IFIC is entitled to judgment as a matter of law. Accordingly, it is hereby

ORDERED that Defendant International Fidelity Insurance Company's Motion For Summary Judgment Against Plaintiff Modern Electric, Inc., is GRANTED; and it is

FURTHER ORDERED that judgment is entered in favor of Defendant International Fidelity Insurance Company as to Counts I and II of Plaintiff Modern Electric, Inc.'s Amended Complaint.

SO ORDERED.