## A/C ELECTRIC COMPANY, INC. *v.* AETNA INSURANCE COMPANY

[No. 394, September Term, 1967.]

*Decided November 15, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, FINAN, SINGLEY and SMITH, JJ.

*Frank P. Flury* for appellant.

*William A. Ehrmantraut,* with whom were *Edward C. Dona-
hue* and *James P. Gleason* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

A/C Electric Co. (A/C), an electrical subcontractor, entered
into an oral contract to do certain electrical work on the re-
modeling of a restaurant in Washington, D. C. The general con-
tractor was Capitol Construction Co. (Capitol), a proprietor-
ship conducted by Albert Berkman. Berkman, as principal, and
Aetna Insurance Company (Aetna), as surety, had provided the
owner of the restaurant with a labor and material payment bond
in the penal sum of $8,500.00.

The parties have stipulated that A/C did $9,734.00 worth of
work on the restaurant. Sometime in May of 1965, Capitol sent

A/C a check for $5,000.00, which was intended to be a partial payment on account. Capitol's bank declined to honor the check, however, and on 24 June 1965, Capitol gave A/C a confessed judgment note, guaranteed by Albert Berkman. The note was in the amount of $10,068.81, maturing in 60 days and providing for interest at 6%, and was designed to cover not only the restaurant job, but other amounts owed A/C by Capitol.

On 9 July 1965, A/C filed notice of its intention to assert a mechanic's lien against the restaurant, but for some reason not clear to us, this was not pursued.

On 12 July, A/C wrote to Aetna:

> "Confirming our telephone conversation of Wednesday, July 7, 1965.
>
> "Since you people furnished a payment and performance bond on the above job, we are notifying you of our interest in same.
>
> "The amount of our bill is $9734.62. After many attempts, even through the National Bank of Rosslyn, Virginia (Mrs. Hayes) to collect same, we have only a 60 day note which we are holding until August 23, 1965.
>
> "If we do not receive payment that day, appropriate legal action will commence at once."

Capitol failed to honor its note on 25 August, and on the following day, Aetna wrote to Berkman:

> "We have been put on notice of a mechanics' lien, filed by the A/C Electric Co. Inc. in the amount of $9,734.62 on the above captioned bond.
>
> "As indemnitor under this bond, we are looking to you to satisfy this claim or put us in funds, in order that we might satisfy the claim.
>
> "We would appreciate your prompt reply concerning your intentions on this matter."

On 3 September 1968, Aetna wrote to A/C:

> "This will acknowledge your letter of August 30th,[1]

---

1. The letter of 30 August is not in the record.

addressed to the attention of Mr. Wm. Haggerty of this office.

"We are presently checking into this matter and you should be hearing from us within ten days to two weeks concerning our status in this matter."

When neither Capitol nor Aetna paid A/C's bill, on 20 May 1966 suit was instituted against Capitol, Berkman and Aetna. On motion of the plaintiff, summary judgment was entered against Capitol and Berkman, and the case proceeded to trial against Aetna. At the close of A/C's case, Aetna's motion for a directed verdict was granted. From the judgment entered for Aetna, this appeal was taken.

Problems arising from surety arrangements are as old as recorded history.[2] As presented to us in the briefs and on argument, the case involves a head-on collision between two principles of the law of suretyship, both too well recognized to require extensive elaboration. On the one hand, A/C argues that a creditor's acceptance of additional collateral security, even though it has a maturity date later than that of the original debt, does not amount, in the absence of an agreement, to an extension of time of payment which will release a surety from his obligation and cites *Hayes v. Wells,* 34 Md. 512, 517 (1871). To the same effect, *see Asbell v. Bldg. & Loan Ass'n,* 156 Md. 106, 143 A. 715 (1928); *Berman v. Elm Loan & Savings Ass'n,* 114 Md. 191, 78 A. 1104 (1910); *American Iron & Steel Mfg. Co. v. Beall,* 101 Md. 423, 61 A. 629 (1905); *Warner v. Williams,* 93 Md. 517, 49 A. 559 (1901); *Oberndorff v. Union Bank,* 31 Md. 126 (1869); Stearns, *Suretyship* (5th ed. 1951) § 6.27 at 149; and Brandt, *Suretyship and Guaranty* (3d ed. 1905) § 403 at 767.

On the other hand, Aetna contends that, by taking the note, A/C substituted a wholly new obligation for the debt which had existed on open account, thus extending time of payment, and that this released the surety under the rule of *Dixon v. Spencer,* 59 Md. 246 (1883) and *Berman v. Elm Loan & Savings Ass'n, supra.* These cases hold that when a creditor and

2. "He that is surety for a stranger shall smart for it." Proverbs 11:15.

the principal alter the terms of an obligation without the consent of the surety, the surety is discharged. Stearns, *op. cit.*, § 6.22 at 143-44.

The lower court rejected A/C's contention and accepted Aetna's argument. As we see it, under the facts of the case, neither contention is controlling.

Capitol was sued as a corporation; service of process was made on Albert Berkman as its "secretary-treasurer"; and judgment was entered against it as a corporation. The stenographic transcript of arguments on the motion for directed verdict indicates that counsel for both Aetna and A/C were under the impression that Capitol was a corporation. In fact, as the trial judge pointed out, Capitol Construction Company was an individual proprietorship, but counsel for both parties readily conceded that this should not affect the result. We think it was of considerable significance. The record shows that Aetna's bond identified the principal as "Albert Berkman t/a Capitol Construction Company." The bond application was signed "Capitol Const. Co. by Albert Berkman", as was the note which Capitol gave A/C.

A/C's dealings were with Berkman, who traded as Capitol Construction Company. When A/C took Capitol's note, guaranteed by Berkman, it got nothing more than Berkman's promise to pay, the same promise which Berkman had made when A/C extended Capitol credit on open account. What A/C accepted, however, was an obligation having a different due date from that created by the extension of credit on open account: the note called for payment 60 days from date, with interest at 6%. The obligor and obligee of the note were precisely the same as the parties who had dealt on open account, and in this respect, *Brengle v. Bushey,* 40 Md. 141 (1874), where additional and better security was given by one of two joint and several obligors, is distinguishable. When it took the notes, A/C not only failed to improve the quality of its security, but converted an indebtedness which was immediately due to one where payment could not be enforced for 60 days. It cannot be successfully maintained that the note was collateral security for the payment of a prior debt or that payment of the open account could have been enforced, once the note was accepted. In es-

sence, the note was given and accepted in substitution for and in satisfaction of a pre-existing and different obligation.

However, Aetna's reliance on the rule of *Dixon v. Spencer, supra,* is misplaced, under all the circumstances. In that case, Spencer agreed to furnish ale, beer and porter to Houck on credit, payable in 30 days. Dixon guaranteed the payment of the account. When Houck's indebtedness to Spencer aggregated $263.53, Spencer took two promissory notes for the amount due, payable in 60 and 90 days. Judge Robinson, speaking for our predecessors, said:

> "The main question is whether the taking of these promissory notes by the appellees discharges the appellant from his liability as guarantor.
>
> "It can hardly be necessary to cite authorities in support of the general principle, that where the time of payment is, without the consent of the surety, extended for a definite time, by a valid contract between the creditor and the principal, the surety is thereby discharged. The subject and the many decisions in regard to it, are fully considered and discussed in 2 Amer. Lead. Cas. 431. See also Brandt on Surety. & Guar. 401.
>
> "The surety, by his contract, merely guarantees the payment by his principal of a certain sum of money at a stipulated time. This he engages to do and no more. Upon the default of the principal he has the right to pay the money and to proceed at once against him for indemnity. If the creditor, however, makes a new contract with the principal—takes his promissory note, payable at another and further time—he is thereby precluded from suing on the original contract until the maturity of the note, and the surety is also deprived of the right to pay the money due on his contract, the payment of which is necessary to enable him to proceed against the principal. By his own act, the creditor has entered into a new contract with the principal, and for the time being has tied his own hands, and the hands of the surety so far as regards the original contract. In so doing without the consent of the surety, the law

says the latter shall be discharged." 59 Md. at 247-48.

*Dixon v. Spencer,* although correctly decided on its facts, is not determinative of the issue before us. *Dixon,* like *Berman v. Elm Loan & Savings Ass'n, supra,* dealt with the rights of an individual, and presumably uncompensated, surety. Shortly after the turn of the century, our predecessors intimated that a surety "* * * whose obligation is deliberately entered into, as a commercial transaction, and with the exclusive view to the pecuniary profit resulting from it", *Smith v. Turner,* 101 Md. 584, 587-88, 61 A. 334 (1905), might expect to receive treatment different from that which traditionally had been accorded an uncompensated surety. Thereafter, the principle was followed in *Aetna Indemnity Co. v. Waters,* 110 Md. 673, 699, 73 A. 712 (1909) and formally articulated in *Southern Md. Nat'l Bank v. Nat'l Surety Co.,* 126 Md. 290, 94 A. 916 (1915):

> "The doctrine that a surety is a favorite of the law, and that a claim against him is *strictissimi juris* does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit." 126 Md. at 293.

To the same effect are *Chapman v. Hoage,* 296 U. S. 526, 80 L. Ed. 370, 56 S. Ct. 333 (1936); *Maryland Casualty Co. v. Fowler,* 31 F. 2d 881, 884 (4th Cir. 1929); *Hartford Accident & Indemnity Co. v. Knox Net & Twine Co.,* 150 Md. 40, 43, 132 A. 261 (1926); and *American Fidelity Co. v. Short & Walls Lumber Co.,* 128 Md. 50, 56, 97 A. 12 (1916).

In *Maryland Casualty Co. v. Fowler, supra,* Judge (later Chief Judge) Parker, spoke for the Fourth Circuit:

> "The rule is well settled in this circuit that a compensated surety is in effect an insurer, that its contract will be construed as an insurance contract most strongly in favor of the party or parties protected thereby, that forfeiture on technical grounds will not be favored, and that the strictissimi juris rule of the law of suretyship will not be applied for its protection (citing cases)."
>
> * * *

"There is authority for the position, also, that failure to give notice under a bond such as this will not discharge the company, in the absence of a showing of loss or damage resulting therefrom * * * (citing cases)." *Id.,* at 884.

The principle was further elaborated when Judge Mitchell, speaking for this Court in *Women's Hospital v. U.S.F. & G. Co.,* 177 Md. 615, 11 A. 2d 457 (1940), recognized that among the principles to be applied in construing a performance and payment bond were:

"(1) That since the advent of corporate bonding companies whose business it is to become surety upon bonds for a profit, the old doctrine that a surety is a favorite of the law and that a claim against him is *strictissimi juris* has been greatly minimized; (2) that the business of surety corporations being in all essentials practically that of insurers, the liability upon bonds executed by them has been liberally extended beyond that to which sureties were formerly held, (citing cases)." 177 Md. at 618-19.

For other cases holding that the contract of a surety for profit is not to be so strictly construed as one of a surety not for gain, see *Walsh v. Jefferson Fed'l Savings & Loan Ass'n,* 216 Md. 131, 137, 139 A. 2d 847 (1958); *Lange v. Board of Education,* 183 Md. 255, 260, 37 A. 2d 317 (1944).

As we said in *Berry v. U.S.F. & G. Co.,* 249 Md. 150, 156, 238 A. 2d 907 (1968):

"As the individual surety of the nineteenth century was supplanted by the corporate surety, the modern concepts of the law of suretyship evolved rapidly."

and quoted Stearns, *supra,* § 2.4 at 11-13:

"Because of the often repeated adjuration that the surety is a favorite of the law, some confusion has arisen as to the manner in which suretyship agreements are to be construed. As we have seen, the early suretyship cases treated the contract as one of great

burden to the surety, because of the fact that it was usually made for accommodation only, and without any participation in the benefits of the principal contract. These reasons gave rise to a line of decisions strictly construing the suretyship contract in favor of the surety, following the legal doctrine of *'strictissimi juris.'* Although the rule is still applied where an uncompensated surety is involved, the courts generally have abandoned it as to a paid surety and, indeed, tend to construe such a surety's contract in favor of the obligee. A paid surety which is a surety or bonding company is usually considered to be in the same class as an insurance company, its contract being held to be in the nature of insurance and to be construed according to the rules applicable to insurance contracts."

The narrow question raised by this case is whether an extension of time for payment, granted by a creditor to the principal, without the consent of a compensated surety, effects a discharge of that surety. Although we are mindful of the division which exists among the reported cases, *see* Annotation 74 A. L.R.2d 734 (1960), we think that the modern and correct view is that adopted by Restatement, *Security* (1941) § 129 at 346:

> *"EXTENSION OF TIME TO PRINCIPAL.*
> (1) Subject to the rule stated in Subsection (2) and to the rules in respect of negotiable instruments, where the principal and creditor, without the surety's consent, make a binding agreement to extend the time of payment by the principal, the surety is discharged unless the creditor in the extension agreement reserves. his rights against the surety.
> (2) *Where the surety is a compensated surety he is discharged only to the extent that he is harmed by the extension."* (Emphasis added)

Illustration 4 to § 129 is of particular relevance:

> "P is a building contractor and S is a compensated surety for the materialmen furnishing supplies. S's contract does not contain any stipulations as to the time

of performance by P and the materialmen. The materialmen grant P a ninety day credit which is subsequently extended sixty days. It is found that the total credit extended to P was reasonable in the circumstances. S remains liable because the reasonable interpretation of his obligation is that he consented to a reasonable extension of credit to P, irrespective of the original terms of the first arrangements made between P and the materialmen."

*See also, Ore-Ida Potato Products, Inc. v. United Pacific Ins. Co.,* 87 Idaho 185, 392 P. 2d 191 (1964) which adopts the Restatement view; 50 Am. Jur. *Suretyship* (1956) § 322 at 1116-17; 72 C.J.S. *Principal and Surety* (1951) § 124 c at 604-05, and *compare United States Fid. & Guar. Co. v. United States,* 191 U. S. 416, 48 L. Ed. 242, 24 S. Ct. 142 (1903).

We note, but do not regard as necessarily controlling, A/C's commendable diligence in notifying Aetna on 7 and 12 July that it had accepted Capitol's note, and Aetna's unexplained[3] complacency in failing to reply until 3 September, when it did so without intimating that it intended to resist A/C's claim. While silence on the part of a surety is not ordinarily regarded as acquiescence or consent, *American Iron & Steel Mfg. Co. v. Beall,* 101 Md. 423, 426, 61 A. 629 (1905); Stearns, *op. cit.,* § 6.45 at 182, if Aetna is to be regarded as an insurer, other principles may apply. It is well recognized that an insurer may, by its conduct, be deemed to have waived a condition of its policy or some irregularity on the part of its insured, if no extension of coverage results. *American Auto. Ins. Co. v. Master Bldg. Supply & Lbr. Co.,* 179 F. Supp. 699 (D. Md. 1959); *McFarland v. Farm Bureau Mutual Auto. Ins. Co.,* 201 Md. 241, 248, 93 A. 2d 551 (1953); *Manufacturers Casualty Ins. Co. v. Roach,* 25 F. Supp. 852, 853-54 (D. Md. 1939); *Prudential Ins. Co. v. Brookman,* 167 Md. 616, 620, 175 A. 838 (1934); *Bower & Kaufman v. Bothwell,* 152 Md. 392, 396-97, 136 A. 892 (1927).

---

3. A/C's letter of 30 August, which was not offered in evidence, might have shed some light on this.

420

We conclude that A/C's acceptance of Capitol's note did not, as a matter of law, discharge Aetna; that whether the acceptance of the note amounted to an unreasonable extension of time under all the circumstances [4] or worked a prejudice on Aetna were questions of fact, to be considered by the jury; and that the motion for a directed verdict was improvidently granted.

*Judgment reversed; case remanded for trial; costs to abide the result.*

---

4. In this regard, it is interesting to note that the bond issued by Aetna provided that suit could only be brought 90 days after the labor was last performed.