757 A.2d 791

The **CADLE COMPANY**

v.

**ARBORWOOD II NOMINEE CORPORATION, Shelter Corporation of Canada Limited and Earl G. Glover, c/o General American Real Estate and Development.**

**Misc. No. 10, Sept. Term, 1999.**

Court of Appeals of Maryland.

Aug. 18, 2000.

---

Sandford F. Schmidt (Law Offices of Sandford F. Schmidt, Medford, NJ; and William P. Baker, Baker, Baker & Twomey, Baltimore, all on brief), for Appellant.

Howard R. Feldman (Whiteford, Taylor & Preston, LLP, on brief), Baltimore, for Appellees.

Argued before BELL, C.J.,and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

ELDRIDGE, Judge.

This case involves a Certified Question from the United States Court of Appeals for the Third Circuit, pursuant to the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 1998 Repl.Vol.), §§ 12–601 to 12–613 of the Courts and Judicial Proceedings Article, and Maryland Rule 8–305. The question of Maryland law which we are asked to resolve is as follows:

> "Whether a surety who is not a surety or bonding company and who receives no direct compensation for his obligation as a surety, but who nevertheless has a financial interest in the underlying transaction and obligation apart from his service as a surety, is excused from his secondary obligation when the term of the underlying loan is extended without his consent?"

The United States Court of Appeals noted that the "question might also be answered by reference to the broader question whether the Maryland Court of Appeals would adhere to the Restatement (First) of Security [1941] position, or would adopt the Restatement (Third) of Suretyship & Guaranty [1995] position?"

We shall answer the certified question in the affirmative. We continue our adherence to the Restatement (First) position and our prior cases which hold that "when a creditor and the principal alter the terms of an obligation without the consent of the surety, the surety is discharged" unless the surety is a "compensated surety," a term of art meaning a business association " 'organized to make such bonds or under-

takings for profit.' " *A/C Electric Co. v. Aetna Ins. Co.*, 251 Md. 410, 413–414, 416, 418, 247 A.2d 708, 710, 711, 712 (1968), quoting *State to Use of So. Md. Nat'l Bank of La Plata v. Nat'l Surety Co.*, 126 Md. 290, 293, 94 A. 916, 917 (1915).

## I.

This action came before the federal appellate court on appeal from a final judgment of the United States District Court for the District of New Jersey. The District Court granted summary judgment in favor of defendant Earl G. Glover, in an action brought by the Cadle Company against Glover as surety of seventeen notes and mortgages upon which the primary obligor, defendant Arborwood II Nominee Corporation, had defaulted. (Arborwood and another defendant, Shelter Corporation of Canada, Limited, did not answer Cadle's complaint and had default judgments entered against them.) The United States Court of Appeals for the Third Circuit related certain uncontested facts, which we summarize below, as being pertinent to the appeal.

In 1983, Shelter decided to convert some apartments in New Jersey, which were owned by Shelter's subsidiary Arborwood, into condominiums. Arborwood executed forty-two notes and mortgages in favor of Shelter. General American Real Estate and Development, Inc., a Maryland company operated and principally owned by Glover, was hired to develop and manage the condominium conversion. To aid in carrying out the conversion, Glover was made an officer of both Shelter and Arborwood.[1]

In late 1983, First American Bank of Maryland agreed to provide financing to Shelter in exchange for an assignment of the notes and mortgages, payment on which was due in five years. As a condition of the financing, First American re-

---

1. According to the federal District Court in its unreported opinion, Glover asserted that neither he nor General American received any compensation for his being appointed an officer in Shelter and Arborwood, and, "despite extensive discovery," Cadle was unable to show that Glover was a shareholder in either corporation.

quired Glover to sign what was called a guarantee agreement, in which he agreed to serve as a guarantor of the bank's loan to Shelter. This agreement contained conflicting provisions which were at the heart of the case before the District Court. On the one hand, Paragraph 1 stated that the guarantor "unconditionally and absolutely guarantees" payment to the lender regardless of whether the lender was First American or an assignee. Paragraph 2 purported to waive the guarantor's defenses, stating, *inter alia*, that the guarantor waives requirements of notice, consents to "extensions of the time of payment," and "shall remain liable ... notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge." On the other hand, Glover added Paragraph 11 to the draft agreement presented to him by the bank. This paragraph stated that, "[n]otwithstanding anything herein contained to the contrary," the guarantor would not be bound by any modifications "in the terms, covenants or conditions" of the notes without notice given by the lender to the guarantor and without the consent of the guarantor.

In January 1989, First American sent to a senior vice president of Shelter in Canada a proposal that the terms of the notes and mortgages be extended for three months if Shelter would pay $1,000. In August 1989, First American, Shelter, and Arborwood agreed, in Maryland, to extend the terms of the notes and mortgages until late 1993. Glover signed the August 1989 extension agreements as an officer of Arborwood. First American assigned seventeen of the loans to the plaintiff Cadle in 1993 shortly before they became due. When Arborwood defaulted on the loans, Cadle served notice of the default on Arborwood and also informed Glover that it intended to hold him liable on the notes and mortgages.

In addition to the uncontested facts summarized above, the United States Court of Appeals for the Third Circuit stated that this Court can assume the "following facts ... for the purposes of this certification procedure, if necessary:

"a. Glover, as owner of the manager and developer for the condominium conversion, had a personal financial inter-

est in the underlying transaction for which he provided a guarantee.

"b. Glover did not consent to the extension of the underlying obligation.

"c. Whether Paragraph 2 or Paragraph 11 of the Guarantee governs depends solely on the answer to the question certified.

"d. Although denominated a Guarantee and referring to guarantors, the agreement between Glover and First American was in fact a suretyship agreement, and Glover is therefore a surety, not a guarantor, of Arborwood's obligation."

## II.

For more than 150 years, this Court has consistently taken the position that when the creditor grants to the principal an extension of time for payment, without the consent of a surety which is not in the suretyship business, then the surety is discharged as a matter of law. As this Court stated in *Clagett v. Salmon*, 5 G. & J. 314, 351 (1833), citing Chancellor Kent in *King v. Baldwin*, 2 Johns. Ch. 554, 559 (1817),

"where time is given by contract, to the principal for the payment of the debt, without the consent of the surety, he will be discharged, because he is only bound by the terms of his contract, and any variation of those terms without his consent, will operate to discharge him."

*See Asbell v. Marshall Bldg. & Loan Assn.*, 156 Md. 106, 111–112,143 A. 715, 717–718 (1928), and cases there discussed; *Dixon v. Spencer, McKay & Co.*, 59 Md. 246, 247 (1883) ("It can hardly be necessary to cite authorities in support of the general principle, that where the time of payment is, without the consent of the surety, extended for a definite time, by a valid contract between the creditor and the principal, the surety is thereby discharged"). *See also Mayhew v. Boyd*, 5 Md. 102, 110 (1853) (holding that actual proof of prejudice "does not vary the question. Any dealings with the principal debtor by the creditor which amounts to a departure from the

contract by which a surety is to be bound, and which by possibility might materially vary or enlarge the latter's liabilities without his assent, operates as a discharge of the surety").

In *A/C Electric Co. v. Aetna Ins. Co., supra,* this Court addressed the question of "whether an extension of time for payment, granted by a creditor to the principal, without the consent of a compensated surety, effects a discharge of that surety." 251 Md. at 418, 247 A.2d at 712. The Court in *A/C Electric* held that a compensated surety, unlike an uncompensated surety under similar circumstances, was not discharged as a matter of law, but would have to prove that it had been prejudiced by the time extension and, if it could so prove, would have its obligation lessened to the extent of its harm. 251 Md. at 416–418, 247 A.2d at 711–712.

The Court in *A/C Electric* discussed a number of prior cases which, although they did not concern the effect of extensions of time for payment or other material alterations on suretyship agreements, articulated the principle that "compensated sureties," *i.e.,* surety and bonding companies, were generally subjected to a different standard than uncompensated sureties. *See* 251 Md. at 415–419, 247 A.2d at 710–713. The rationale for different treatment was that " 'the business of surety corporations being in all essentials practically that of insurers, the liability upon bonds executed by them has been liberally extended beyond that to which sureties were formerly held.' " *A/C Electric,* 251 Md. at 417, 247 A.2d at 712, quoting *Hospital for Women of Md. v. U.S. Fid. & Guar. Co.,* 177 Md. 615, 618–619, 11 A.2d 457, 459 (1940). The Court in *A/C Electric* also pointed out that the " 'doctrine that a surety is favorite of the law ... does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit.' " 251 Md. at 416, 247 A.2d at 711, quoting *So. Md. Nat'l Bank v. Nat'l Surety Co., supra,* 126 Md. at 293, 94 A. at 916–917. *See also State Hwy. Adm. v. Transamerica Ins.,* 278 Md. 690, 699–700, 367 A.2d 509, 515 (1976).

In answering the question before it, the Court in *A/C Electric,* 251 Md. at 418, 247 A.2d at 712, noted that the Restatement (First) of Security had adopted the "correct view" of the matter and quoted § 129. That section states, in relevant part, as follows:

"(1) Subject to the rule stated in Subsection (2) ... where the principal and creditor, without the surety's consent, make a binding agreement to extend the time of payment by the principal, the surety is discharged....

"(2) Where the surety is a compensated surety he is discharged only to the extent that he is harmed by the extension."

The Restatement (First) defines the term "compensated surety" in the same way as *A/C Electric* and earlier opinions by this Court, and justifies different treatment for the same policy reasons. Section 82(i) defines the term as follows (emphasis supplied):

"The term 'compensated surety' is used in the Restatement of this Subject to mean a person who engages in the business of executing surety contracts for a compensation called a premium, which is determined by a computation of risks on an actuarial basis. Compensated sureties are generally incorporated. *Other sureties, whether strictly gratuitous or whether receiving some pecuniary advantage, whose surety contracts are occasional and incidental to other business, are not included among compensated sureties.*

"It is important to distinguish between compensated and other sureties because the rules of suretyship, notably those relating to the defenses of the surety, are not in all respects alike for the two classes. *The basis for the distinction is that one engaged in the business of executing surety contracts can be expected to have contemplated and taken account of, in the premium charged, certain elements of risk which are not considered to have been assumed by other sureties. See* § 129."

In contrast to the Restatement (First), the new Restatement (Third) of Suretyship and Guaranty abolishes the distinction between compensated and other sureties, preferring to use the term "secondary obligor" to designate all sureties. The Restatement (Third) also, at first glance, abolishes the difference in treatment accorded compensated and all other sureties regarding unconsented extensions of time. Section 40 states, in relevant part, as follows:

"If the obligee grants the principal obligor an extension of the time for performance of its duties pursuant to the underlying obligation:

\* \* \*

"(b) to the extent that the secondary obligor has not performed its duties pursuant to the secondary obligation, it is discharged from those duties to the extent that the extension would otherwise cause the secondary obligor a loss."

In other words, under the Restatement (Third), all sureties, including those not traditionally defined as compensated, will not be discharged as a matter of law because of an unconsented extension of time.

The Restatement (Third), however, does distinguish between two classes of sureties with regard to whether the surety or the creditor bears the burden of persuasion in showing the existence of harm and the degree of harm which has resulted from an unconsented extension of time. These two classes differ significantly from the Restatement (First)'s division into compensated sureties, i.e., surety or bonding companies, and all other sureties. According to the Restatement (Third) § 49, with respect to unconsented time extensions and other material modifications of the agreement, virtually all sureties which derive any sort of direct or indirect economic benefit from the agreement bear the burden of persuasion, whereas gratuitous sureties are presumed to suffer a total loss and the burden of persuasion is on the creditor to prove a lesser amount of harm.

We are not persuaded, however, that a business person such as Glover, who occasionally may be required by a lender to act as a surety as a condition for the financing of a project from which he anticipates business profits, should be considered as being "in the business of entering into secondary obligations"[2] in the same manner as a surety company which seeks to profit, not from the underlying project, but from the premium charged for serving as a surety.

Moreover, the idea that such business persons should be treated as "compensated" sureties was known to and rejected by the drafters of the Restatement (First) of Security. There were some appellate opinions prior to the Restatement (First) which treated financially interested sureties as compensated sureties. *See* Gary L. Monserud, *Interested Sureties and the Restatement of Suretyship: An Argument Against Tender Treatment*, 15 Hamline L.Rev. 247, 294–297 (1992). The drafters of the Restatement (First) rejected the reasoning of these cases in favor of the rationale described in § 82(i) quoted earlier. Furthermore, the drafters pointed out that such cases represented a minority view. *See* the Restatement of Security (First) § 82, comment (i), explanatory note (Tentative Draft No. 3, 1939).

We agree with the rule and policy set forth by this Court in *A/C Electric Co. v. Aetna Ins. Co., supra,* and numerous other cases, that only surety and bonding companies, whose business is to charge premiums for serving as sureties and who function as insurers, should not be entitled to a discharge as a matter of law when the creditor and principal enter into an agreement, without the consent of the surety, to extend the time when payment is due. Such companies, unlike nonprofessional sureties, can protect themselves by credit evaluations, indemnity agreements, and premium rate structures.

---

**2.** Restatement (Third) of Suretyship and Guaranty, § 49, comment (b) (1995).

■ In conclusion, our answer to the certified question is that a surety, who is not a compensated surety, *i.e.,* a surety or bonding company which receives a premium for its obligation as a surety, but who may, nevertheless, have some financial interest in the underlying transaction apart from his or her service as a surety, is, as a matter of law, excused from his or her surety obligation when the term of the underlying loan is extended without the surety's consent. Put another way, we continue to adhere to the distinction drawn in our prior cases and in the Restatement (First) of Security between compensated and all other sureties.

*CERTIFIED QUESTION ANSWERED IN THE AFFIRMATIVE. COSTS TO BE PAID BY THE CADLE COMPANY.*