863 A.2d 347

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, et al.

v.

WADSWORTH GOLF CONSTRUCTION COMPANY
OF the MIDWEST d/b/a Wadsworth Golf
Construction Company.

No. 517, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Oct. 12, 2004.

' Michael E. Jaffee (Mary Margaret Utterback, Thelen Reid & Priest LLP, on the brief), Washington, DC, for appellant.

Russell C. Dashiell, Jr. (Dirk W. Widdowson, Widdowson and Dashiell, PA, on the brief), Salisbury; (Stephen P. Lagoy, Unruh, Turner, Burke & Frees, on the brief), Westchester, PA, for appellee.

Panel: DEBORAH S. EYLER, BARBERA, GREENE,* JJ.

BARBERA, Judge.

This case involves a surety's obligation under a payment bond. Appellants, National Union Fire Insurance Company of

---

* Greene, J., now a member of the Court of Appeals, participated in the conference and decision of this case while a member of this Court; and participated in the adoption of this opinion as a member of this Court by special designation.

Pittsburgh, Federal Insurance Company, and Fidelity and Deposit Company of Maryland (collectively, "the Sureties"), appeal from an order issued by the Circuit Court for Dorchester County granting a motion for summary judgment in favor of appellee, Wadsworth Golf Construction Company of the Midwest d/b/a Wadsworth Golf Construction Company ("Wadsworth"). The Sureties raise the following questions, which we have set forth substantially as they appear in their brief:

I. Whether the trial court erred in granting [Wadsworth's] motion for summary judgment by ruling that [the Sureties] forfeited all defenses to the [Wadsworth's] payment bond claim when they did not communicate a decision on the claim to Wadsworth within 45 days of the date that the proof of claim was received.

II. Whether the trial court erred in granting [Wadsworth's] motion for summary judgment by ruling that the subcontract payment clauses are void as a matter of public policy.

For the reasons that follow, we answer "no" to the first question and affirm the judgment of the circuit court on that basis. Our disposition of the first issue obviates the need to reach the second question presented.

## I.

On November 22, 1999, Clark Construction Group, Inc. ("Clark" or "the general contractor") contracted with the Maryland Economic Development Corporation ("MEDCO" or "the owner") to serve as general contractor for the construction of the Hyatt Regency Chesapeake Bay Resort in Cambridge.[1] At the same time, for the purpose of guaranteeing completion of the construction, Clark executed a surety bond (or "payment bond") in favor of MEDCO in the amount of

---

1. Neither Clark nor MEDCO is a party to this appeal.

$70,864,000.00.[2] This bond secured Clark's obligation to pay all labor, material, and equipment costs necessary to construct the resort. The payment bond provides, in pertinent part:

4 The Surety shall have no obligation to Claimants under this Bond until:

4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

\* \* \*

6 When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

6.1 Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

6.2 Pay or arrange for payment of any undisputed amounts.

Eight days later, Clark subcontracted with Wadsworth to build an 18–hole golf course, and to complete excavation and rough grading work for all buildings, parking lots, and roads located on the resort. The subcontract provided that Clark would pay Wadsworth a base price of $3,986,000.00. During the course of construction, the base price was increased to $5,696,318.00. Clark also asked Wadsworth to complete additional work, not included in the base price, totaling $138,714.45.

The subcontract also provided, in Paragraph 4.j.:

At any time all monies due Clark from the Owner are not paid, Clark shall, in its sole discretion, apportion the non-

---

2. Clark and MEDCO used a "form" surety bond—the March 1987 edition of The American Institute of Architects ("AIA") Document A312.

payment equitably and reduce the payments otherwise due Subcontractor accordingly. Such reductions shall continue until Clark is paid all monies due it, provided, however, if the withholdings relate to Subcontractor's work, Subcontractor shall be paid in full when Clark's right to recover from the Owner is finally determined or expires. Subcontractor acknowledges that this Article 4.j. establishes a reasonable time for payment.

According to Wadsworth, it completed construction of the golf course and the required site work sometime before March 2002. At that time, Wadsworth unsuccessfully attempted to collect the monies Clark still owed it, approximately $720,963.45, *i.e.*, the remainder of the base price ($582,249.00), plus the cost of the additional work ($138,714.45) performed by Wadsworth. The reason for Clark's non-payment is that sometime in late 2001, MEDCO discontinued payments to Clark, causing Clark, in turn, to discontinue payments to Wadsworth.

On March 23, 2002, Wadsworth notified the Sureties by certified letter of its claim for payment under the payment bond. Ten days later, Federal Insurance Company, one of the Sureties, responded to Wadsworth's claim, stating:

Please be advised that American International Group ["AIG"] is the lead surety with regard to this matter. As a result, by copy of this letter, I am forwarding a copy of your letter to Susan Hellerman of AIG for her review and investigation and request that she keep me appraised of the status of her investigation.

Federal Insurance Company writes this letter under a full reservation of its rights and with the understanding that any actions we have taken or may take do not constitute a waiver of any defenses available under the bond or applicable law, including specifically any defenses pertaining to statutes of limitation or timely filing of appropriate notices.

By letter dated April 5, 2002, Ms. Hellerman, of AIG, acknowledged receipt of Wadsworth's claim. She requested that Wadsworth document its claim against the payment bond

by submission of a completed Proof of Claim form (a blank form was enclosed with the letter) and supporting materials. The letter further stated: "Please be advised that this action is taken at this time without waiver of or prejudice to any of the rights and defenses, past or present, known or unknown which either the above referenced Surety (National Union Fire Insurance Company) or Principal (The Clark Construction Group, Inc.) may have in this matter."

On May 3, 2002, Wadsworth submitted to AIG the completed Proof of Claim form and supporting documentation. Shortly thereafter, AIG notified Wadsworth by letter that it had received the documents, and that it would "immediately take[ ] this matter up with the above referenced Principal (The Clark Construction Group, Inc.), in order to ascertain their position on [the] claim as presented." The letter further stated: "I [Susan Hellerman] will be in contact with you in due course regarding [Clark's] position on the Proof of Claim as presented by your company on the above referenced bond." Wadsworth, however, received no further information from the Sureties regarding its claim, despite having sent a second letter, on July 23, 2002, requesting an answer to its claim.

On November 6, 2002, Wadsworth filed a single count complaint in the Circuit Court for Dorchester County against the Sureties. The complaint alleged breach of contract and sought $752,738.72 in damages, plus pre-judgment and post-judgment interest.[3] That same day, Wadsworth also filed a motion for summary judgment, arguing that the Sureties had waived the right to challenge Wadsworth's claim under the payment bond because the Sureties had not "answered" Wadsworth's claim within 45 days of receiving notice of it. Wadsworth appended to its motion the affidavits of Wadsworth's vice-president, Brian R. Cunfer, and attorney, Stephen P. Lagoy.

---

3. This sum was thereafter reduced to $720,963.45. At the subsequent motions hearing, Wadsworth did not request, nor did the court award, pre-judgment interest.

In response, the Sureties filed a motion to stay proceedings pending the outcome of litigation that Clark had initiated against MEDCO.[4] The Sureties also filed a cross-motion for summary judgment, raising two grounds for relief: (1) pursuant to Article 4.j. of the subcontract, the money Clark owed to Wadsworth was not then "due" because MEDCO had not paid Clark; and (2) the Sureties' payment obligation under the terms of the payment bond arose only when Clark failed to pay amounts "due." Appended to the Sureties' motion was the affidavit of Michael Mansager, employed by Clark as the Project Executive responsible for the management and oversight of Clark's contract with MEDCO, who testified that Clark had paid Wadsworth "all sums currently due and owing."

The motions came on for a hearing on April 28, 2003. At its close, the court stated:

I'm going to grant the motion for summary judgment on behalf of Wadsworth—Wadsworth is the Plaintiff here—and I base that on two things: (1) I think that under the terms of the bond itself that they [the Sureties] are estopped from now contesting because there was not a response within the time set forth in the payment bond. Secondly, however—in other words, that would be enough to decide the matter, but if I'm wrong on that then I think that the General Assembly has made plain in the portion of the statute that has been read to me that a construction here that would make this on a pay-if-paid basis would be void against public policy of the state.

\* \* \*

I don't know all of the background here, but I'm convinced that this contract under the enactments of the Gen-

---

4. The suit is styled *The Clark Const. Co. Group, Inc. v. Maryland Econ. Dev. Corp.*, No. 09–C–02–11331 CN, and is filed in the Circuit Court for Dorchester County. According to the Sureties, this case was to be tried in early 2004. The docket of the Circuit Court for Dorchester County, however, reflects that the case has been continued and, as of the date of the filing of this opinion, has not gone to trial.

eral Assembly is against public policy if I were to construe it as pay-as-paid—or pay-when-paid. That's the ruling of the Court.

A written order embodying the court's judgment was thereafter entered on the docket. This timely appeal followed.

## II.

This appeal is taken from the grant of summary judgment. We review such judgments *de novo*. *Tyma v. Montgomery County*, 369 Md. 497, 504, 801 A.2d 148 (2002); *Middlebrook Tech. LLC v. Moore*, 157 Md.App. 40, 58, 849 A.2d 63 (2004). In doing so, we are required to determine whether a dispute of material fact exists. *Beyer v. Morgan State Univ.*, 369 Md. 335, 359–60, 800 A.2d 707 (2002). " 'A material fact is a fact the resolution of which will somehow affect the outcome of the case.' " *Matthews v. Howell*, 359 Md. 152, 161, 753 A.2d 69 (2000) (quoting *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985)).

Summary judgment is only appropriate when, upon review of the facts and inferences therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. Md. Rule 2–501(f); *Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 533, 836 A.2d 655 (2003). If the record reveals that a material fact is in dispute, summary judgment is inappropriate. *Okwa v. Harper*, 360 Md. 161, 178, 757 A.2d 118 (2000). Once we have concluded that there is no genuine issue of material fact, we review the trial court's grant of summary judgment to ascertain if it was legally correct. *Jahnigen v. Smith*, 143 Md.App. 547, 555, 795 A.2d 234, *cert. denied*, 369 Md. 660, 802 A.2d 439 (2002).

## III.

The first of the two independent grounds upon which the court granted summary judgment in favor of Wadsworth is that the Sureties failed to answer Wadsworth's claim within 45

days of receiving it, as required by the payment bond, and, as a consequence of that failure, the Sureties were foreclosed from disputing the claim. The court was correct in so ruling.

The provisions for filing and responding to a claim against the payment bond are found in Paragraphs 4 and 6 of that document. Paragraph 4 requires that a claimant notify the surety "that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim." Paragraph 6 then requires that,

> [w]hen the Claimant has satisfied the conditions of Paragraph 4, the Surety **shall promptly and at the Surety's expense take the following actions:** Send an answer to the Claimant ... within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed[,]

and "[p]ay or arrange for payment of any undisputed amounts."

It is undisputed that Wadsworth properly notified the Sureties that it was filing a claim under the payment bond. It is also undisputed that the Sureties did not submit to Wadsworth an answer within 45 days of receiving the claim, in compliance with Paragraph 6.1, and the Sureties did not pay or arrange for payment of the undisputed claim, in compliance with Paragraph 6.2. On these undisputed facts, the court concluded that the Sureties were foreclosed from raising defenses to their non-payment of Wadsworth's claim.

The Sureties marshal several arguments in support of their position that this conclusion was error as a matter of law. They argue: (1) Wadsworth's claim for non-payment was not ripe because Clark's right to recover from MEDCO had not yet been determined; (2) the plain language of the bond does not set forth express consequences for a surety's failure to answer a claim within 45 days of receiving it; and (3) the failure to answer Wadsworth's claim did not manifest an intentional or implied intent to waive any right to defend against Wadsworth's claim. We are not persuaded by any of these arguments.

## IV.

 We begin our analysis with a review of the characteristics of a suretyship contract and a summary of the relevant principles governing the interpretation and construction of contracts. A suretyship contract is a tripartite agreement among "a principal obligor, an obligee, and a surety." *Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co.,* 380 Md. 285, 299, 844 A.2d 460 (2004); *see also* PETER A. ALCES, THE LAW OF SURETYSHIP AND GUARANTY 1-1 (2003) (stating "[s]uretyship law orders the rights and liabilities of three parties inter se: the debtor, the creditor, and the surety"). In a payment bond, like the one at issue in the instant case, "the surety guarantees the principal's duty to the obligee to pay its (the principal's) laborers, subcontractors, and suppliers." *Atlantic Contracting,* 380 Md. at 299, 844 A.2d 460.

 "The liability of a surety is coextensive with that of the principal." *Id.* Ultimate liability, however, " 'rests upon the principal obligor rather than the surety, but the obligee has a remedy against both.' " *Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co.,* 120 Md.App. 538, 550, 707 A.2d 913 (1998) (quoting *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 259, 492 A.2d 1306 (1985)). Consequently, upon default by the principal of the obligation to pay, the surety is immediately liable. *Atlantic Contracting,* 380 Md. at 300, 844 A.2d 460.[5]

 " 'A surety bond is a contract and is to be construed as such.' " *Id.* (citation omitted). As with all contracts, a suretyship contract is interpreted by its terms. *General Motors Acceptance Corp.,* 303 Md. at 261, 492 A.2d 1306. "Maryland has long adhered to the objective law of contract interpretation and construction." *Wells v. Chevy Chase Bank, F.S.B.,* 377 Md. 197, 224 n. 12, 832 A.2d 812 (2003). Therefore,

---

5. Once the surety pays the obligee, it may proceed against the principal for indemnity. *Atlantic Contracting,* 380 Md. at 300, 844 A.2d 460.

"[a] court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give [ ]way to what the parties thought that the agreement meant or intended it to mean."

*Id.* at 224–25, 832 A.2d 812 (citation omitted).

 "The interpretation of unambiguous contract terms presents a question of law for the court to resolve." *Chicago Title Ins. Co.,* 120 Md.App. at 548, 707 A.2d 913. In that instance, the court's interpretation is subject to *de novo* review by an appellate court. *Atlantic Contracting,* 380 Md. at 300–01, 844 A.2d 460. "When the language of the contract is ambiguous, however, the ambiguity must be resolved by the trier of fact." *Chicago Title Ins. Co.,* 120 Md.App. at 549, 707 A.2d 913.

 " '[S]ureties for hire ... must abide by their contracts and pay everything which by fair intendment can be charged against them. They act, not to accommodate others, but to promote their own interests, and are to be judged accordingly.' " *Moore Bros. Co. v. Brown & Root, Inc.,* 207 F.3d 717, 723 (4th Cir.2000) (citation omitted); *accord The Cadle Co. v. Arborwood II Nominee Corp.,* 360 Md. 240, 246, 757 A.2d 791 (2000) (stating that the " ' "doctrine that a surety is a favorite of the law ... does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit" ' ") (citations omitted); *A/C Elec. Co., Inc. v. Aetna Ins. Co.,* 251 Md. 410, 417, 247 A.2d 708 (1968) (noting " '[t]hat since the

advent of corporate bonding companies whose business it is to become surety upon bonds for a profit, the old doctrine that a surety is a favorite of the law and that a claim against him is *strictissimi juris* has been greatly minimized' ") (quoting *Women's Hosp. v. U.S.F. & G. Co.*, 177 Md. 615, 618–19, 11 A.2d 457 (1940)); *Berry v. U.S.F. & G. Co.*, 249 Md. 150, 156, 238 A.2d 907 (1968) (noting that " '[a]s the individual surety of the nineteenth century was supplanted by the corporate surety, the modern concepts of the law of suretyship evolved rapidly' ") (citation omitted).

██ Because corporate bonding companies act with much self-interest, courts tend to construe a paid surety's contract in favor of the obligee. *A/C Elec. Co.*, 251 Md. at 418, 247 A.2d 708. Indeed, the Court of Appeals, in *A/C Elec. Co.*, quoted with favor the following observation of the United States Court of Appeals for the Fourth Circuit: " 'The rule is well settled in this circuit that a compensated surety is in effect an insurer, that its contract will be construed as an insurance contract most strongly in favor of the party or parties protected thereby, that forfeiture on technical grounds will not be favored, and the strictissimi juris rule of the law of suretyship will not be applied for its protection.' " *Id.* at 416, 247 A.2d 708 (quoting *Maryland Cas. Co. v. Fowler*, 31 F.2d 881, 884 (4th Cir.1929) (internal quotation marks omitted)). *See also The Cadle Co.*, 360 Md. at 246, 757 A.2d 791 (noting that compensated sureties are subjected to a different standard than uncompensated sureties because surety corporations are " ' "being in all essentials practically that of insurers" ' ") (citations omitted).

██ "In a three-way relationship between a surety, an obligee, and a principal, the reasonable expectations of all the parties must be effectuated and the surety must act in a reasonable manner in handling or paying claims." *Atlantic Contracting*, 380 Md. at 308, 844 A.2d 460. Moreover, " 'a bond is to be construed in connection with the contract whose performance it secures.' " *Id.* at 310, 844 A.2d 460 (quoting *State Highway Admin. v. Transamerica Ins. Co.*, 278 Md.

690, 700, 367 A.2d 509 (1976)). Therefore, "[c]ontractual terms cannot be read out of the agreement altogether, and the meaning of a provision is not discerned by reading it in isolation, but by recognizing its relation to the other terms of the complete contractual relationship." *Id.* With these principles of law in mind, we turn to the case at bar.

## V.

 Resolution of this appeal hinges upon this Court's interpretation of Paragraph 6 of the payment bond. Paragraph 6 requires that, "[w]hen the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense[,] . . . [s]end an answer to the Claimant . . . within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed." As we have mentioned, there is no dispute that Wadsworth did file such a claim, and the Sureties, moreover, do not suggest that they answered Wadsworth's claim within 45 days of its filing.

The Sureties argue, however, that Wadsworth's claim was premature because it was for non-payment of monies that Clark did not yet owe Wadsworth. Consequently, the Sureties maintain, the provisions of Paragraph 6, including its 45–day answer period, were not triggered. In so arguing, the Sureties rely on the principle, cited above, that "a bond is to be construed in connection with the contract whose performance it secures." The Sureties direct us to Paragraph 4.j. of Clark's subcontract with Wadsworth, which essentially provides that Clark does not owe Wadsworth for its work until Clark is paid by MEDCO.

The problem the Sureties have in making this argument is that it could have been, but was not, asserted in the answer to Wadsworth's Proof of Claim. We note, too, that Paragraph 4 of the bond agreement does not condition the subcontractor's *filing* of a claim for payment upon the fact of non-payment of monies owed the subcontractor by the principal. Rather, upon the filing of what the surety believes is a premature

claim, it is incumbent upon the surety to dispute the claim on the ground that payment is not yet due. If the surety does not do so, the terms of the payment bond require it to proceed promptly with payment of the undisputed claim.

The Sureties also assert that they are not liable to Wadsworth under the payment bond because the plain language of the bond does not set forth express consequences for a surety's failure to answer a claim within 45 days of receiving it.[6] In support of this contention, the Sureties look to *Mayor & City Council of Baltimore v. Fidelity and Deposit Co. of Maryland*, 282 Md. 431, 386 A.2d 749 (1978), and *Lange v. Board of Educ. of Cecil County*, 183 Md. 255, 37 A.2d 317 (1944). The Sureties capitalize on the Court of Appeals' statement in each case that a surety's liability is not to be extended beyond the terms of its contract. 282 Md. at 441, 386 A.2d 749, 183 Md. at 260, 37 A.2d 317. From this proposition the Sureties declare:

> It follows that in order for the surety to forfeit its right to defenses, such a provision would have to be set out in the bond. Here, there is nothing in the language of the Payment Bond that indicates the Sureties' agreement to forfeit defenses should they fail to respond to a claimant's notice.

We fail to see how the principle stated in *Fidelity and Deposit Co.* and *Lange* leads to the conclusion urged by the Sureties. In filing a claim under the payment bond, Wadsworth did not seek to "extend" or "enlarge" the terms of the bond. To the contrary, Wadsworth, believing that Clark owed it a significant sum of money, acted in accordance with the bond's terms. Moreover, had the Sureties wanted a "nonforfeiture of defenses" provision to be included in the bond, they certainly could have included such a provision.

The Sureties also maintain that their failure to answer Wadsworth's claim within 45 days cannot rightly be deemed a

---

6. We note that, although the bond used in this case is a "form" bond supplied by the AIA, *see supra*, note 2, we found no cases in Maryland or elsewhere interpreting the language of Paragraph 6 or, for that matter, any other provision of this form.

forfeiture or waiver of their right to dispute the claim or otherwise defend against it, because they were merely silent in response to the claim. In so arguing, the Sureties seize upon the following language from *A/C Elec. Co.*: "[S]ilence on the part of a surety is not ordinarily regarded as acquiescence or consent." 251 Md. at 419, 247 A.2d 708. They omit, however, the full text of that sentence, which reads: "While silence on the part of a surety is not ordinarily regarded as acquiescence or consent, if Aetna [the surety for profit] is to be regarded as an insurer, other principles may apply." *Id.* (citations omitted). The Sureties also omit the very next sentence of the opinion, which reads: "It is well recognized that an insurer may, by its conduct, be deemed to have waived a condition of its policy or some irregularity on the part of its insured." *Id.*

The appellate courts of this State have dealt with questions concerning waiver and the related doctrine of estoppel. In *Gould v. Transamerican Assocs.*, 224 Md. 285, 167 A.2d 905 (1961), for example, the Court of Appeals set forth in considerable detail the close relationship between waiver and estoppel, and, at times, the difficulty in distinguishing between an implied waiver and an estoppel. The Court stated that

> many courts now state that waiver not only includes the intentional relinquishment of a known right, but such conduct as warrants an inference of the relinquishment of such a right, and may result from an express agreement or be inferred from circumstances.

> Waiver is closely inter-related and intertwined with estoppel. The distinction between waiver and estoppel most frequently adverted to is that waiver rests upon the intention of a party, while estoppel rests upon a detrimental change of position induced by the acts or conduct of the party estopped.

*Id.* at 294–95, 167 A.2d 905; *accord Blue Bird Cab Co., Inc. v. Amalgamated Cas. Ins. Co.*, 109 Md.App. 378, 386, 675 A.2d 122 (1996) (reiterating that "[w]aiver is 'the intentional relinquishment of a known right, or such conduct as warrants an

inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances' ") (citation omitted).

Wadsworth does not, and indeed cannot, contend that the Sureties *expressly* relinquished their contractual right to dispute Wadsworth's claim. Wadsworth does assert, however, that the conduct of the Sureties supports the inference of their intention to relinquish their rights under the payment bond, reflecting an implied waiver of their right to defend against non-payment of the claim. We agree.

As we have said, on three occasions the Sureties acknowledged Wadsworth's claim. Yet at no time did the Sureties answer Wadsworth's claim by "stating the amounts that are undisputed and the basis for challenging any amounts that are disputed," as required by the payment bond. Indeed, the Sureties stood silent in the face of Wadsworth's claim for many months beyond the lapse of the 45–day period for answer, coming forward with their defenses to the claim only in answer to Wadsworth's lawsuit.

## VI.

We are persuaded that Paragraph 6 of the payment bond, read alone and in the context of the remainder of the bond, provides the surety 45 days to dispute a subcontractor's claim for payment and, if the surety does not answer within that time period, the surety waives its right thereafter to dispute the claim. This construction of the payment bond, moreover, comports with the purpose of such instruments, which is

> to insure that claimants who perform work are paid for their work *in the event that the principal does not pay.* To suggest that non-payment by the Owners absolves the surety of its obligation is nonsensical, for it defeats the very purpose of a payment bond.

*Moore Bros. Co.,* 207 F.3d at 723. As the Court of Appeals recently expressed:

The reasonable behavior required of a surety acting in good faith is not meant to foster reluctance on a surety's part to satisfy bond claims. We agree with the court in *General Accident Insurance Co. of America v. Merritt-Meridian Construction Corp.,* 975 F.Supp. 511, 516 (S.D.N.Y.1997), which explained:

> Sureties enjoy such discretion to settle claims because of the important function they serve in the construction industry, and because the economic incentives motivating them are a sufficient safeguard against payment of invalid claims. The many parties to a typical construction contract—owners, general contractors, subcontractors and sub-subcontractors—look to sureties to provide assurance that defaults by any of the myriad other parties involved will not result in a loss to them. Courts have recognized that "as a practical matter the suppliers and small contractors on large construction projects need reasonably prompt payment for their work and materials in order for them to remain solvent and stay in business."

(citations omitted).

*Atlantic Contracting,* 380 Md. at 314, 844 A.2d 460.

The 45-day response time mandated by Paragraph 6 of the bond gives effect to that purpose. To interpret the bond as permitting the Sureties to ignore the period within which to respond to Wadsworth's claim, only then to raise defenses to the claim upon Wadsworth's filing of its suit, runs contrary to the bond's purpose of safeguarding the suppliers of goods and labor. Nor can we imagine a reason for inclusion of the 45-day provision in the bond other than that it is there to be relied upon by the claimant and adhered to by the surety.

Furthermore, to read the time period within which the surety "shall" respond to the claims in any way other than as imposing a mandatory time limit upon the surety for contesting the claim borders on the nonsensical, as it renders the 45-day time requirement essentially nugatory. Finally, our interpretation of the payment bond is in accord with the principle that contracts of a surety for profit are to be construed in

favor of the obligee. *A/C Elec. Co.*, 251 Md. at 418, 247 A.2d 708.

## VII.

Applying this construction of the payment bond to the present case leads us directly to the conclusion that the circuit court correctly granted summary judgment in favor of Wadsworth's breach of contract claim against the Sureties. Wadsworth filed its claim, pursuant to Paragraph 4 of the bond. The Sureties failed to answer Wadsworth's claim within 45 days of receiving it, or to make prompt payment (or promptly arrange for same) as set forth in Paragraph 6. The Sureties waived their right to dispute the claim at a later date, or to raise any such dispute as a defense to Wadsworth's suit for breach of the terms of the payment bond that undisputed claims be promptly paid.

## VIII.

Because we have determined that the court properly granted summary judgment in favor of Wadsworth on the ground that the Sureties failed to answer Wadsworth's claim with 45 days of receiving notice of it, we need not reach the Sureties' additional argument that the court erred in finding that provisions of the subcontract between Clark and Wadsworth are void as against public policy.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**